Freeland v. The City of Muscatine.

FREELAND v. THE CITY OF MUSCATINE.[1]

1. CORPORATIONS LIABLE AS WRONG DOERS. An action will lie against a municipal corporation for injuries resulting from wrongful acts done by such corporation, through its officers and agents, claiming to act within the scope of its legitimate powers.
2. MEASURE OF DAMAGES. In estimating the damages sustained by the destruction of a building, the jury may consider the cost of rebuilding, in connection with the quality and condition of the building before it was destroyed. The loss sustained by plaintiff in being deprived of the use of his house, when such loss was the immediate and necessary consequence of the wrongful act of defendant, may also be considered by the jury.

1. The judgment of the court below, in *Kahn* v. *The City of Muscatine*, was affirmed. The opinion in that case follows this, and as no different questions are presented and discussed, it is not reported at length.

*Appeal from Muscatine District Court.*

FRIDAY, OCTOBER 28.

The first count of the petition alleges that the defendant, in July 1857, by her officers, agents and servants, wrongfully dug up, took and carried away, from the front of plaintiff's house, (which was the Muscatine Hotel,) situate on lot five, in block seventy-four; in Muscatine, the soil or earth below the established grade as fixed by the proper authorities, to the depth of three feet, and in so doing undermined the front wall of said hotel, and greatly damaged the same, and caused one part of said house to fall, &c., to his damage, twenty-five hundred dollars.

The second count alleges that plaintiff's house was built to or with the established grade, and that the defendant, by her officers, &c., pretended to establish an alteration in the grade around and in front of plaintiff's house, which pretended grade was three feet below that formerly established, and was three feet below the foundation of petitioner's house, and that after the said pretended establishment of grade, the defendant, by its officers and agents, wrongfully dug, took and carried away from the street in front of his house, and up to his lines, the earth then and there being, and by so doing caused part of plaintiff's house to fall; and that, in consequence of said pretended alteration, and the taking away of the earth around his house, he has been compelled, &c.

The defendant pleaded to the jurisdiction, that by act of 24th January, 1855, (statute 1855, ch. 50, p. 76,) matters of this nature were triable by three commissioners, and that their original jurisdiction of such causes is exclusive. A demurrer to this plea was sustained. The defendant then demurred to the petition, for reasons then assigned, and the demurrer being sustained, the plaintiff amended. An answer was then filed taking issue on the petition. Upon a trial, verdict and judgment were rendered in favor of the plaintiff. The defendant appeals.

Freeland v. The City of Muscatine.

*Richman & Bro.* for the appellants.

Prior to the act approved January 24, 1855, (chapter 50, page 76; laws of 1855,) a person whose property was injured by a change of grade, had no remedy. No action lies at common law against a municipal corporation, for damages sustained by a change of grade; and the court could acquire jurisdiction in such an action only under a statute. 2 Kent, 273, (274 marginal;) *Creel* v. *The City of Keokuk*, 4 G. Greene, 47; and the authorities there cited; *Lang* v. *Scott*, 1 Black. 405; 10 John. 389; 23 Pick. 36; 3 Met. 380; 1 Ib. 130, 253; 2 Ib. 599; 7 Hill 575.

*D. C. Cloud*, for the appellee, cited, in support of the jurisdiction of the District Court, 6 Amer. Law Reg. 157; *Andover and Medford Turnpike Corporation* v. *Gould*, 6 Mass. 40; *The Franklin Glass Company* v. *White*, 14 Ib. 286; *City of Boston* v. *Shaw*, 1 Met. 138.

WOODWARD, J.—The first assignment of error is to the overruling the plea to the jurisdiction, filed by defendant. There was no error in this. The plaintiff's claim is not based on the special act of 24th January, 1855, (p. 76.) That act supposes the city to be acting under its recognized powers in a regular manner, and aims to provide a mode for ascertaining the damages when private property is taken or injured by the changing of the grade, or course, or width of the street. But the plaintiff's complaint in his first count is, that the city *wrongfully* dug up and carried away the earth from below the established grade, and, in so doing, undermined the wall of his house. The second count is not subject to any cause of demurrer assigned against it, but it is not easy to say what the plaintiff means by the averment that the defendant *pretended* to make an alteration of the grade. It appears to have been regarded, in the court below, to mean that under such pretence they wrongfully dug and carried away the earth, so as to injure the plaintiff's house. In this view it alleges a legal cause of action. The

view to be taken of the petition, is not as claiming under the act above named, but entirely outside of it. It charges that the city wrongfully dug up and carried away the earth, up to the line of plaintiff's house, so that in consequence it fell, &c. The charge is made against the city in the same light as it would be against any other person acting illegally, and without authority. It is, that she was acting outside of her legitimate authority, and was a wrong doer. We think the action lies, and that the plea was properly overruled.

Under this view, the special act above referred to is not brought within our reach, to determine on its constitutionality; nor is the question whether the remedy of a party, in the cases thus contemplated, is limited to the mode there prescribed. The act is, certainly, subject to weighty doubts, but as this action does not conflict with its provisions, we cannot take it into consideration.

The sixth assignment is to the giving the instructions requested by plaintiff. We will briefly notice those objected to by the defendant. The first is, that a municipal corporation may, as a general principle, be sued like individuals for injuries resulting to the property of others from the acts of the corporation, though claiming to act within the scope of its authority, and without any circumstances of negligence or malice. This was not intended, by either the court or the counsel, to bear the sense put upon it by the defendant, but the reverse. It was designed to say that such corporations are liable for their torts, or wrongful acts, the same as others, though *claiming* to act upon authority. The point and emphasis lies in the word *claiming*. The *result* determines the question. If they show they acted within authority, they are justified, and if not, they are liable, as others are. A strict construction more nearly gives the sense intended. If designed in the sense given by the defendant, it would, probably, be erroneous.

The second instruction is not erroneous in holding that the city may be rendered liable by going beyond the established grade. The case of *Callender* v. *Marsh*, 1 Pick. 418, cited

and strongly relied upon in *Creel* v. *Keokuk*, 4 G. Greene 49, limits the exemption from liability of an officer, &c., to the line of proper authority, and so the city, too, would be limited.

There was no error in instructing the jury that, in estimating the damages, the cost of rebuilding or repairing was proper to be taken into consideration, if we understand it as having reference to the quality and condition of the building before the accident, and the instruction cannot be taken in any other sense.   It is the cost of *rebuilding* or *repairing*, which implies the restoring it to as good a condition as before, and not the putting a new and firm building in the place of an old or decayed one.   And so the loss of the plaintiff, in being deprived of the use of his house, might be considered, if this was the immediate and necessary consequence of the act of the defendant.   *Coates & Patchen* v. *The City of Davenport, ante.*

The fifth assignment falls under the same idea as the second.   The tenth and eleventh instructions are excepted to.   These are somewhat too general in their terms, but we do not think them sufficiently so, nor so liable to mislead the jury, as to call for a reversal.   In connection with these, the plaintiff, in the eighth and ninth instructions, requested the court to instruct that the changes which the city may make, and which are contemplated in the above act, must be adopted by ordinance regularly published, and that the person whose property is taken or affected, is entitled to notice.   It is not requisite to determine these questions of adopting such improvements by ordinance, and of notice to the owner of property affected, for the reason that the court refused to give this ninth instruction.   And farther, in regard to all the points suggested in this paragraph, and embraced in the eighth, ninth, tenth and eleventh instructions, we make the general remark that they contemplate the action of the city within the range of its lawful authority, and are not appro-

priate to this action which is based upon the reverse ground. And so the giving of those which were given, was immaterial, and wrought no harm to the defendant. These remarks cover the main part of the exceptions taken by the defendant, the principal of which, and the one embracing the substance of the others, was that the plaintiff was limited to the remedy provided by the act of 24th January, 1855, Chapter 50, p. 76.

The fourth instruction asked by the defendant, and the alleged inconsistency between that and the tenth and eleventh requested by the plaintiff and given, under the views before expressed, become of no importance; that is, the view of the case taken by the defendant has caused him to ask instructions and to take positions not suitable to the case. He takes it for granted that the action is for operations confessedly done within the purview of the act of 1855, whilst it is the reverse, for acts not within that statute and not authorized in any manner. It is for this reason that we have not noticed some of his points particularly. They are covered by the views taken of the case in its main character.

Finally, the defendant excepts to the overruling the motion for a new trial, which was made upon the alleged ground that the verdict was contrary to the law, the evidence and the instructions of the court. And he insists that the court left the question of jurisdiction to the jury. The most of these grounds of complaint come within the range of the questions before noticed. If the plaintiff sued for injuries such as are provided for by the act of 1855, then the court might not have jurisdiction, but if otherwise, it would; we do not determine the first point. (Though the validity of that act is questioned by the plaintiff, for several reasons, it is not regarded necessary to discuss it, and it is for this case assumed.) This question of the jurisdiction depended on facts to be found by the jury; and the effect of the instructions, in this respect, was only, that if the jury found that the city did certain things, or things of a certain character, the law would permit the plaintiff to recover—that he could sustain

Freeland v. The City of Muscatine.

an action in that court. This was not allowing the jury to determine the question of jurisdiction.

The court gave to the jury thirteen instructions asked by the defendant, and of course they were quite as much in his favor as he could expect. And after careful attention given to the case, we do not think the verdict contrary to the instructions, unless it may be so in regard to those which partially conflict with some requested by the plaintiff and given But this was immaterial as to those relating to the plaintiff's right to sue in that court, because the action does not stand upon the ground assumed.

And it is intended by the defendant, perhaps, that the verdict is against the instructions, relating to the controlling force of the base line. Although it may be readily admitted that, as a rule, the base line is to govern, we are not prepared to say that a mistake may not be shown in that as well as in other of the figures. It is true that it is not as *readily* to be admitted, but *if shown*, it would be dangerous to hold that it is still inflexible, and that all others must bend to it. Carry such a rule out, to a strong degree, let the error be sixty, instead of six, feet, and it will take us where we shall meet with difficulty.

The defendant is correct when he says that it was incumbent on the plaintiff to show the acts done wrongfully, as alleged. But he farther says the plaintiff wholly failed in this. There were several facts to be found by the jury, and on some the testimony was conflicting, and if we were to say that the jury was wrong, it would be difficult to state wherein they were so, and to maintain it.

. The law permits a court to set aside a verdict; but when for the cause of being contrary to the evidence, it should be. a clear case, a strong and convincing one. And this we do not think to be such a case. We might doubt as to the verdict, or we might have differed from it, had we been on the jury, but it is not *clearly* wrong. We do not, by any means, see our way clear to set aside the verdict.

The defendant objects to the twelfth instruction, by which

the court charged the jury that the owners of the adjacent lots also owned the soil, of fee simple, to the center of the street, subject to the public easement. We do not see that this could affect the case, for, admitting this rule, the authorities have the right to grade the streets, under their charter, and it is only by transgressing this power that they become wrong-doers, and this again brings us back to the ground upon which the action is based. *The city of Dubuque* v. *Malony, ante.*

The judgment of the District Court is affirmed.