PINGERY v. THE CHEROKEE AND DAKOTA RAILWAY COMPANY.

1. **Evidence**: COMPETENCY OF WITNESSES : PROOF OF : RIGHT-OF-WAY DAMAGES. It is not necessary that the competency of a witness to testify to a certain fact should appear alone from the testimony of the witness, nor that it should be testified to in terms. If the fact appears from any evidence in the case, or from the record, or is deducible from other established facts in the case, it is sufficient. (See opinion for application of rule to right-of-way damage case.)

2. **Railroads** : RIGHT-OF-WAY DAMAGES : EVIDENCE : VALUE OF LAND TAKEN. On the question of damages resulting to a tract of land from the taking of a right of way for a railroad over it, it was proper to allow the plaintiff to prove the value per acre of the land

Pingery v. The Cherokee & Dak. Ry. Co.

taken for the right of way, as the loss of the land is an element of his damages, though its value is not necessarily the full measure thereof. (*Winklemans v. Railway Co.*, 62 Iowa, 11, *distinguished;* and compare *Smalley v. Railway Co.*, 36 Iowa, 571.)

3. ———— : ———— : ———— : DANGER FROM FIRE : INCREASED RATES OF INSURANCE. While increased risk of fire from locomotives is an element of damage in right-of-way cases, and proper for the jury to consider, it is the risk of the owner, and not of an insurance company, that is to be considered; and a question to an insurance agent as to the effect which the building of the road would have on the rates of insurance on plaintiff's property was properly excluded as irrelevant. (*Lance v. Railway Co.*, 57 Iowa, 638, *distinguished.*)

4. ———— : ———— : ———— : ———— : SAFEGUARDS USED BY COMPANY. In such case it was incompetent for the company to show the character of netting or screens used in the smoke-stacks of its engines, for the purpose of proving that the danger from fire was diminished thereby ; for the damages were not to be assessed on a basis that the company would continue to use such screens, or that the same company would continue to operate the road.

5. Appeal : PRESUMPTION IN FAVOR OF TRIAL COURT : EXCLUSION OF EVIDENCE : RIGHT-OF-WAY DAMAGES. To exclude evidence which could of itself avail nothing upon the issue of the case, and the exclusion of which would have been without prejudice had direct evidence on the issue been offered and admitted, is no ground for reversal : for this court cannot presume that the trial court would have committed error by excluding the direct evidence, if offered.

6. Instructions : INSTRUCTION REFUSED COVERED BY CHARGE OF COURT : RIGHT-OF-WAY DAMAGES. There is no error in refusing an instruction asked, when the substance of it is clearly given in the court's own charge.

7. ———— : ON POINT NOT IN EVIDENCE : REFUSAL : NO PREJUDICE : RIGHT-OF-WAY DAMAGES. An instruction to the jury not to consider a certain question in their estimation of damages was properly refused, where there was no evidence requiring such an instruction, and the only reason for it would be to guard against the possibility that the jury would on its own motion consider it,— the instructions given being sufficient to obviate such possibility.

8. ———— : REFUSAL ' EQUALLY FAVORABLE INSTRUCTION BY COURT : RIGHT-OF-WAY DAMAGES. An instruction given by the court, which is as favorable to the defendant as one asked by it, and in substance directs the jury to the same purpose, makes it unnecessary to give the one asked.

9. ———— : RIGHT-OF-WAY DAMAGES : CROSSINGS. In a right-of-way damage case, where crossings on plaintiff's land were already established, but there was a dispute as to where they should be,

the court properly instructed the jury: "You have nothing to do with the question as to whether the defendant company has or has not refused to, or will or will not, furnish proper and suitable crossings. That question may arise in a proper proceeding."

10. ———: ———: CARE OF TRACK, CATTLE-GUARDS, ETC. In such case, the court having instructed the jury that they had nothing to do with the question of whether or not the defendant would keep its track and cattle-guards in proper shape, and its trestle-work open, *held* that it was not prejudicial error to neglect to add, as might well have been done, that plaintiff could require the company to·do so; for this would without doubt be understood by the jury, as to whose knowledge of well-known principles a court may indulge a reasonable presumption.

*Appeal from Cherokee District Court.*—HON. C. H. LEWIS, Judge.

FILED, OCTOBER 12, 1889.

ACTION for the condemnation of a right of way over plaintiff's lands. From the findings of a jury on appeal to the district court the defendant appeals to this court.

*E. C. Herrick, M. Wakefield* and *Thomas McCulla,* for appellant.

*A. F. Meservey* and *William McHenry,* for appellee.

GRANGER, J.—I. Several witnesses testified as to the value of plaintiff's farm, both before and after the location of defendant's road across it. There was an objection to the testimony on the ground that the witnesses had not shown themselves competent; the precise point being that it did not appear that the witnesses knew of the date of the location or building of the road, and that without such knowledge they could not properly testify as to values before and after the location. Without citing the testimony of the several witnesses separately, it is sufficient to say that their testimony showed them to be farmers. That they had resided in Cherokee county for periods ranging from nine to thirty years. Each stated that he knew the lands in question,

1. EVIDENCE: competency of witnesses: proof of: right-of-way damages.

and was acquainted with the value of farm lands in Cherokee county. Neither witness stated in terms that he knew the date of the location of the road, nor was the question asked him. The main purpose of showing the fact would be to enable the court to know if the witness was qualified to testify as to values before and after the location. Conceding that the court should know that fact to admit the testimony, it is not necessary that it should appear alone from the testimony of the witness. If the fact appeared from any evidence in the case, or from the record, the court could take notice of it in making his ruling. Nor is it necessary that the fact should be testified to in terms. If it is a fact deducible from other established facts in the case, the court may thus find. The railroad company filed its application for a sheriff's jury to assess the damage, July 18, 1887, and this case was tried in the district court in December thereafter. The court took notice of such facts from the record, where they appear. The testimony of the witnesses showed them residents of the county from nine to thirty years; and, from the well-known publicity of such an event as the location and building of a railroad through a county, the court might well understand from the facts before it that the witnesses knew of the time of the location. If it be said that the road may have been located and built before the assessment by the sheriff's jury, it is sufficient to say such is not the fact, as both the application for a jury to assess, and the return of the jury, show the assessment was of damages to be, and not that had been, sustained by the location of the road. If, in view of these facts, appellant felt that the court was not sufficiently advised, a word of cross-examination might have put the matter beyond controversy.

II. By a stipulation in the record it appears that the right of way across plaintiff's farm occupied 12.28 acres, and against the objection of the defendant plaintiff was allowed to prove the value thereof per acre, and error is assigned in this respect. In support of

2. RAILROADS: right-of-way damages: evidence: value of land taken.

this assignment we are referred to *Winklemans v. Railway Co.*, 62 Iowa, 11. The point ruled there is of very different import from that under consideration. In that case the effort was to prove the value of a part of the farm, and this court held that it could not be done; that "the land was used, improved and occupied as one farm, and could not properly be valued in detached parcels." In this case the proof is as to the value of the right of way, which is no longer a part of the farm. It is what is taken, and its value is a legitimate part of the loss or damage. It is true, the plaintiff cannot have the value of the right of way, and, in addition, the damage to the farm. The depreciation in value to the farm is made up of the loss of the land taken and other resulting damages. The plaintiff, in making his proofs, is not confined to mere expert testimony as to values before and after location, but he may put the jury in possession of such facts as will enable it to make the legitimate estimate of damage therefrom ; and this is but one link in the chain of such proofs. There might be a case in which the only damage to the farm would be the land taken, and in such a case the most direct and reasonable way to reach the result would be to fix the value of the land taken by competent evidence. Without exception there is damage to the extent of such value, for no benefits can be considered; and whether or not other damages result is a question for the jury. This holding has something of support in the approval of an instruction in *Smalley v. Railway Co.*, 36 Iowa, 571.

III. Defendant introduced as a witness one Green, who testified that he was an insurance agent, and knew the rates of insurance on various risks by fire companies. He was asked, "What effect the building of a railroad within the distance of one hundred and fifty feet of a barn would have on the rate of insurance that it would take to keep the barn insured." The court sustained an objection to the question that it was incompetent, irrelevant and immaterial. Error is assigned as to the ruling. Appellant urges, both upon reason and

3. ——: ——:
——: danger from fire: increased rates of insurance.

authority, "that the jury had a right to consider this question of danger from fire in determining the weight to be given to the estimates of damage of the various witnesses." We think this position of appellant is correct, but we do not see the bearing on the question submitted. The question has to do only with the rates of insurance companies. We know of no law—barring, perhaps, that of a business character—requiring the plaintiff to keep her barn insured. Risk to the property by the operations of trains, whereby fires are likely to occur, is a proper element in fixing damages, but it is not the law that this element of damage is to be considered on a basis that property, if insurable, must be kept insured. We are referred to the case of *Johnson v. Railway Co.*, 37 Minn. 519 ; 35 N. W. Rep. 438, in support of appellant's theory. Referring to the case, it has not a remote reference to insurance. It sustains the doctrine that increased risk of fire is an element of damage in this class of cases, and proper for the jury to consider. The risk there mentioned is the risk of the owner, and not that of an insurance company. *Lance v. Railway Co.*, 57 Iowa, 638, is cited in support of a rule that, as showing the danger or risk, it is proper to show the jury the exact situation, and allow it to consider such facts in passing upon the estimates of the witnesses as to the depreciation in value. The case sustains the rule, but again the argument is without force as to the point ruled upon. In this case the distances and surroundings are shown by the testimony, so that the jury, under the rule of *Lance v. Railway Co.*, could consider the increased risk; but neither in the light of reason nor of the authorities cited do we see the bearing of the rates of insurance companies upon the issues of the case.

IV. One Maltby, a civil engineer in the employ of the defendant company, was a witness for the defendant, and it offered to show by such witness the character of netting or screens used in the smoke-stacks of defendant's engines, and that coals or sparks that could escape through such screens could not live to reach the distance of plaintiff's barn from the track. The offer was

4. —: —:
—: —:
safeguards
used by company.

refused. The refusal was not error. The damages were to be assessed, not on a basis that the company would continue to use such screens, or that the same company would continue to operate the road. The easement is presumed to be a continuing one, subject to changes of ownership and methods of operation. If the risk of the owner was to be measured on a basis of the security afforded by a particular screen, then in reason he should have the protection of a law or contract securing to him its use. It is true, the law enjoins upon companies, as a matter of protection against liability for damages, that they shall keep pace with the improvements of the times as to such appliances, and it must be presumed that the damages were assessed in view of this rule of law. But to make the assessment under proofs as to the security of any particular appliance without an obligation for its use, would certainly be erroneous. The point differs but little in principle from an offer to prove that the company operated but one train a day, without any obligation in that respect as to the future; or that the company was using small and, in respect to fires, safe engines. Next year the business of the road might require larger engines, with increased liability as to fires, even with the exercise of proper care. These damages can best be assessed in the light of known facts or results as to the operations of trains, and it is these facts or results, as thus disclosed and known, that impress the market and fix the depreciation as to values. It is not the mere fact of a new and safe appliance that impresses the market. It is the knowledge of the public as to its merits; and this knowledge is practically desirable only from observation in its use.

V. On the application of defendant company, the sheriff's jury assessed the damage to a half section of land as belonging to the plaintiff. In the district court the defendant filed a special answer, denying that the plaintiff was the legal or equitable owner of one forty of the land, describing it. On the trial Mr. Herrick was a witness for defendant, and testified that as attorney for the defendant, and at the request of the

5. APPEAL: presumption in favor of trial court: exclusion of evidence: right-of-way damages.

president of the company, he prepared the papers in the condemnation proceeding. He was then asked three questions, which, in brief, are : (1) What knowledge the company had at the commencement of the proceeding as to the title of the land, other than that possessed by the witness as attorney in charge of the matter; (2) if upon the examination made by him he believed the plaintiff to be the owner of the land; (3) if the proceedings were commenced on the part of the company under a belief that the plaintiff was the owner of the land? To each question the court sustained the objection of incompetency, immateriality and irrelevancy. The only purpose of the allegations in the answer as to the knowledge and beliefs of the defendant at the commencement of the proceeding must have been to excuse a mistake, and open the door for proofs as to title. No objection was taken to the special answer, and we must assume that it, with a denial by operation of law, constituted an issue in the case. To prove these beliefs alone would be of no avail. There was no offer of proofs as to the title. If the proofs as to the title had been offered and admitted, there could have been no prejudicial error in excluding the testimony as to beliefs. To adjudge the court in error we must assume that it was the purpose to offer proofs as to the title, and that it would have been excluded. This we cannot do. Such assumptions against the actions of the court cannot be indulged where the fact on the trial below is so easy of demonstration. We are better prepared to believe that it was the purpose of the court to admit the proofs as to the title without other proofs—which he might do, after objections to the proofs offered—than to assume that he would erroneously have excluded it. There was at least no prejudicial error in the rulings.

VI. The defendant asked the court to instruct the jury as follows: " You are instructed that under the law the plaintiff is entitled to a crossing across the defendant's right of way on her farm at such a reasonable place as she might designate, and the defendant would be bound to furnish such crossing at said place upon a

6. INSTRUCTIONS: instruction refused covered by charge of court: right-of-way damages.

request from plaintiff for the same; and as to the kind of crossing she would be entitled to you are instructed that she would have the right to require either an open or a closed crossing, as she might desire. In case of a failure of the owner to designate the place for such crossing, then the company has the right to put it at such point as it may select. You are further instructed that in assessing the damage for the right of way you have no right to allow any damages for the failure of defendant to locate and provide such crossings as you may think proper and reasonable, at such points as you may think reasonable, if you find there has been such failure on the part of defendant. If there is any liability for a failure to provide proper crossings it cannot be recovered for in this action." The court refused the instruction, and instructed on the point as follows: "(3) In determining the difference in value of the farm before the locating of the road and its value after building the same, you may, and should, consider where the road is laid upon the farm, how it is built as to cuts and fills and trestlework. You have nothing to do with the question as to whether the defendant company has or has not refused to, or will or will not, furnish proper and suitable crossings. That question may arise in a proper proceeding. It is not in this case, and is to be in no way considered by you." The purpose and effect of the two instructions are the same. Nothing more could have been designed by the instruction asked than that the jury should not augment the damage because of any failure of the company to make proper crossings. The court, in language that could not be mistaken, takes the question entirely from the jury. We may add here that in our opinion the instruction cures any error, if there was error, in admitting the testimony of plaintiff as to his conversation with engineer Hill as to the crossings. With such an instruction no prejudice could have resulted if the instruction was obeyed, and we have no reason for thinking it was not.

VII. The defendant asked the court to instruct the jury to the effect that it could not consider any

7. ——:on point
not in evi-
dence: refus-
al: no preju-
dice: right-
of-way dam-
ages.

prospective damages on account of a failure of the company to fence its right of way, etc. This the court refused. No proofs were submitted to necessitate such an instruction, and the only reason for it would be to guard against a possibility that the jury would on its own motion consider it. The court's instructions as to what the jury could consider were very guarded, and, while they did not in terms refer to the subject of the instruction asked, it detailed what the jury should consider as to cuts, fills, trestlework, etc., as stated in the preceding division of the opinion. In the same connection the court further said : "You have nothing to do with the question as to whether or not the defendant will keep its track and cattle-guards in proper shape, or its trestlework open or closed. No damage can be allowed on account of any act of defendant with reference to this." We think the instruction sufficiently specific and comprehensive to protect the defendant against prejudice on account of the refusal of the instructions.

VIII. Instructions were asked by defendant to the effect that a certain trestlework was to be kept open

8. ——: refusal:
equally fa-
vorable in-
struction by
court: right-
of-way dam-
ages.

for the passage of stock, and that defendant was required to furnish proper and adequate cattle-guards. The court did not give the instruction, but gave the instruction as to trestlework and cattle-guards, as before quoted, taking the question entirely from the jury. Counsel concede in argument that it was the probable purpose of the court to guard the jury against increasing the damage on account of any failure to furnish suitable crossings and cattle-guards, but think the language or the instruction conveys a different meaning. To our minds the instruction is not doubtful in this respect. We must presume some intelligence on the part of the jury. The instruction, taken as a whole, was a fair direction to the jury that they were not to give damage for defects or neglects as to crossings,

cattle-guards, trestlework, etc., but that, if the company came short of its duty in such respect, the plaintiff's remedy was by other proceedings. The instructions asked were not more favorable to the defendant.

IX.   A part of the third instruction by the court is criticised, and, although we have quoted it in parts before, to meet particular objections, we again quote the part criticised, as it will be thus better understood :   " You have nothing to do with the question as to whether the defendant company has or has not refused to, or will or will not, furnish proper and suitable crossings.   That question may arise in a proper proceeding.   It is not in this case, and is to be in no way considered by you.   You have nothing to do with the question as to whether or not the defendant will keep its track and cattle-guards in proper shape, or its trestlework open or closed.   No damage can be allowed on account of any act of defendant with reference to this.   If that question ever arises, then, in a proper action, and at a proper time, it may be considered.   You have nothing to do with it, and should not consider it."   The criticism as to the first part of the instruction is that it practically tells the jury that it cannot, in fixing the damages, consider that the company will furnish suitable crossings.   The instruction, viewed in the light of the testimony, is not erroneous.   Crossings on land of plaintiff are already established, and there is testimony tending to show that there is a dispute as to where crossings should be.   The jury was not told that it could not consider the crossings as they were established,—the road as it actually was,—but that it was not to consider the question of the refusal of the company, or what it would, or would not, do in the future as to crossings.   The instruction evidently had reference to the controversy between the parties, and undertook to guard the case against prejudice because of the controversy.   In the immediate connection the court used this language :   " That question may arise in the proper proceeding,"—showing that it had reference to the controversy as to what were

9. ——: right-of-way damages: crossings.

suitable crossings; and with this view the instruction is correct. A further criticism upon the instruction is that, in the latter part, the jury is told that it has nothing to. do with the question of whether or not the defendant will keep its track and cattle-guards in proper shape, or its trestle-word open; but is not advised that the plaintiff could require the company to do so. This might properly have been added to the instruction, but without doubt it was understood as it was given. It is not the rule that a court must commence and build up with every question of fact and principle of law to be considered by the jury, but, indulging a reasonable presumption as to its knowledge of principles commonly understood, give such rules for its guidance as will, under the evidence, enable it to reach a correct result. It is only where it appears affirmatively that this is not done that error can be predicated. The record discloses no reversible error, and the judgment below is

AFFIRMED.