HENRY WATTERS et al., Appellants, v. GEORGE PLATT et al., Trustees, Appellees.

**EMINENT DOMAIN:** Compensation—Measure of Damages. The measure of damages for the condemnation of part of an entity —for instance, a farm—is the difference between the fair market value of the entity before the condemnation and taking, and such value immediately after the condemnation and taking. In arriving at the value of the original entity, due consideration should be given to any particular value which the part sought

to be taken may have for purposes other than those to which it may be then devoted.

*Appeal from Black Hawk District Court.*—C. W. MULLAN, Judge.

SEPTEMBER 17, 1918.

APPEAL from a proceeding to condemn certain land for cemetery purposes. Opinion states the facts. Judgment for the plaintiffs in the court below for an amount unsatisfactory to the plaintiffs. Plaintiffs appeal.—*Affirmed.*

*Edwards, Longley, Ransier & Smith,* for appellants.

*Pickett, Swisher & Farwell,* for appellees.

GAYNOR, J.—This is a proceeding instituted by the township trustees, to condemn certain land to use as a cemetery. The plaintiff is the owner of a farm consisting of 220 acres. Defendants, as trustees, sought to condemn .91 of an acre of his land immediately adjoining an existing cemetery, to be used, when condemned, as a part of such existing cemetery. The record discloses that the trustees applied to the plaintiff to purchase this land for the purpose of extending their cemetery; that a controversy arose as to the price that should be paid for the land. Thereupon, the plaintiff, on November 17, 1915, advertised that he would sell lots for burial purposes within the limits of the tract sought to be condemned, and the next day staked out lots, 20 by 10 feet, 119 in all, and immediately entered into some sort of arrangement with the tenant on his farm and two of his nephews to purchase lots in the proposed cemetery at $10 a lot. On the 18th of November, the trustees applied for the appointment of freeholders to assess the damages which plaintiff would sustain by the appropriation of the tract for cemetery purposes, and commissioners were appointed on the 19th of November. The plaintiff testifies:

"I did not plat the land, or advertise it, or sell any lots, or make any move looking to the use of this piece of ground for cemetery purposes, until after the township trustees came to me to buy it for cemetery purposes."

Thereafter, under the instructions of his attorney, the plaintiff made the following plat of the land, including the original cemetery:

EXHIBIT "A"

BLACKHAWK CEMETERY
PART OF S.E. 1/4 SEC. 27-88-14.
ORIGINAL PLAT FILED FEB. 29, 1898.

The commissioners' report was made on the 1st day of December. Plaintiffs appealed to the district court from the award of the commissioners. A hearing was had in

the district court to a jury, and a verdict returned for the plaintiffs for the sum of $280. Judgment being entered upon the verdict, plaintiffs appeal to this court.

The only question here for our consideration is as to the proper rule for admeasuring the damages which plaintiff has sustained by the taking of this piece of ground. The claim of the plaintiff is that, inasmuch as he had separated it from the farm by staking it off and platting it, and advertised it for sale for cemetery purposes, it should be considered as a separate and distinct entity, and should be valued as such; that, inasmuch as it had been separated by him from the farm, and staked off for cemetery purposes, he was entitled to have its value estimated as for cemetery purposes, and with this in view, he called his witnesses, who testified that this piece of land was adapted to cemetery purposes; was so situated as to be available for that purpose; that it had a market value for that purpose; that the plaintiff had already sold burial lots in the territory sought to be condemned. Thereupon, the plaintiff fixed the value at $1,200, and gave it as his opinion that the 119 lots in the proposed cemetery could be sold at $10 a lot, within five years from that date. His other witnesses expressed the same opinion, though some of them said they thought it could not be realized on for cemetery purposes within less than ten years.

It appears that plaintiff had used this piece of ground in connection with the farm and for farm purposes for eight or ten years; that he owned land immediately south of the old cemetery. The land in controversy was north. He said:

"This land on the south is about the same character of land, and just as valuable for all purposes."

The theory of the defendant was that the measure of plaintiff's damage for the taking of this land is the difference between what the whole farm from which it was taken

was reasonably worth before it was taken, and what it was worth immediately after it was taken, there being no claims for consequential damages shown to have resulted to the land left as a proximate consequence of the taking.

Plaintiff complains in this appeal of the following instructions given by the court:

"Instruction 2.   The measure of the damage sustained by Henry and Isabelle Watters, by reason of the taking of the tract of land in question, is the difference in the market value of the farm from which such tract is taken before such tract was condemned, and taken therefrom, and its market value after the taking of such tract of land by the township trustees.

"Instruction 4.   The market value of land is the actual price at which it may ordinarily be sold on the market to one who desires to purchase.   The price which an owner may put upon his land is not the market value unless it may be sold at such price.   You should, therefore, in determining the amount of damages which you award the appellants, find the actual market value of the appellants' farm, as an entirety, on or about the 1st day of December, 1915, and just prior to the condemnation of the piece of land in question, and the actual market value of such farm immediately after the tract of land in question was condemned and taken from the farm; and the difference between such values is the damage sustained by the appellants.

"Instruction 5.   Evidence has been introduced as tending to show that the tract of land sought to be condemned is of such a character and location that it affords favorable opportunity for the owners to plat it as a cemetery, and when so platted, lots therein might be sold for cemetery purposes.   As to the testimony so introduced, you are instructed that, if you find from the evidence that the tract of land sought to be condemned is of such a character and location as to afford favorable opportunity for the owners to

plat the same for cemetery purposes, and you further find that, by reason thereof, it has a value above that which it otherwise would have as farm land, such fact should be taken into consideration by you in determining the amount of damage sustained by the appellants, by reason of the taking of such tract: that is, you should take into consideration the fair market value of the tract sought to be condemned, for any use to which it is adapted, in determining the difference between the fair market value of the entire farm of the appellants before such tract was taken, and the fair market value of such farm after the tract in question was taken by condemnatory proceedings, and for no other purpose. The ultimate question for your determination, and the one which must determine the amount which you award the appellants as just compensation for the land, is the difference between the fair market value of the entire farm of appellants, as it existed before the taking of the tract in question, and its fair market value after such tract was taken by condemnation."

All rules for the admeasurement of damages are framed with a view of securing a yard stick by which wrongs and injuries and damages may be equitably measured. The theory upon which the rules are framed is the theory of compensating for wrong done, or injury sustained. No rule has ever been devised for the admeasurement of damages that in all cases works absolute justice. The rules to which courts adhere are those which more nearly approximate justice when applied to the many circumstances and conditions out of which injury arises. The general rule adopted for the admeasurement of damages resulting from the taking of private property for public use is the difference between the value of the whole property from which the condemned property is taken at the time of the taking, and the value of the whole property from which it is taken after the taking is complete. One who owns a thing is entitled to

it unimpaired. Those who take from the thing or injure the thing, must respond in damages for the taking or the injury. The taking may not diminish the value of the thing from which it is taken beyond the value of the portion taken. It may diminish it not only in the value of the thing taken, but in the injury to the thing left. The law considers the thing from which it is taken an entity, and a taking from, a diminution of the entity, and not the taking of a distinct entity. The damage is to the entity, measured by the effect that the diminution has upon the market value of the entity. The staking off of this property by the plaintiff did not affect the character of the original entity, the farm body as a whole. It still remained a portion of the entity. As a portion of the entity, it may have had peculiar value because of its availability for other purposes than that to which it was devoted; but this went to enhance the value of the entity of which it was a component part. This thought is emphasized by the testimony of one of plaintiff's witnesses, "that this piece of land, because of its situation and its timbered character, had a peculiar value as a hog lot." An orchard or a vineyard, though consisting of but a few acres, devoted to raising fruits of value, may render the particular tract devoted to that purpose of more value than other portions of the farm of which it is an integral part; and yet no one would think that, if the orchard is appropriated for a public use, or the vineyard taken for a public use, the measure of the injury should be other than the difference between the value of the whole farm, of which it was a part, before and after the taking. The fact of its adaptability to profitable use, being a part of the entire entity, would go, undoubtedly, to enhance the value of the entity, of which it was a part; and yet, the measure would be the difference between the value of the original entity before the taking and the value of the entity after the taking. A departure from this salutary rule would

invite us into the field of speculation, and encourage hasty action to give to the part needed for public use a fictitious value not possessed before the need of it for public use was made known. What we have said is in line with the holding of this court in *Ranck v. City of Cedar Rapids,* 134 Iowa 563, and *Tracy v. City of Mt. Pleasant,* 165 Iowa 435.

We are satisfied with the holding in these cases. The rule laid down in the instructions complained of is in perfect harmony with the rules announced in these cases.

Some complaint is made of the refusal of the court to allow plaintiff to cross-examine certain witnesses of the defendants upon certain points developed in the direct examination. An examination of this record shows that the matters on which plaintiff sought to cross-examine were matters not in dispute. In fact, they were testified to by the plaintiff when upon the witness stand, and the court did not abuse its discretion in refusing to allow the plaintiff to cross-examine on these points.

As we find no error in the record, the cause is—*Affirmed.*

PRESTON, C. J., WEAVER and STEVENS, JJ., concur.