S. A. RANDELL, Appellee, v. IOWA STATE HIGHWAY COMMISSION, Appellant.

No. 41064.

2

John Fletcher, Attorney-general, Maxwell A. O'Brien, Assistant Attorney-general, and Devitt, Eichhorn & Devitt, for appellant.

T. J. Bray, for appellee.

KINDIG, J.—S. A. Randell, the plaintiff-appellee, in 1926 purchased a farm in Mahaska County, consisting of 147.91 acres. This land was bought by the appellee at a referee's sale for $145 per acre. When purchased, the land was divided by railroads and highways in such a way as to constitute six separate and distinct irregular parts.

Thereafter, on September 6, 1928, the defendant appellant, Iowa State Highway Commission, filed an application for the appointment of a commission to condemn a strip of appellee's land containing 3.1 acres lying southwest of, adjacent to, and parallel with the Chicago, Burlington & Quincy Railroad Company right of way. Accordingly the commission was appointed, and on September 19 thereafter it condemned the aforesaid strip of land for highway purposes, and assessed appellee's damages, because of the condemnation, at $830.50.

An appeal was taken by the appellee from that finding to the district court, which resulted in the record now under consideration. It is claimed by the appellee that his land was damaged by the condemnation to the extent of $4,600. So far as the present controversy is concerned, that damage may be classified into the following items: First, land actually taken; second, depreciation to the farm as a whole because of rebuilding a fence removed; third, depreciation of the value of the land as a whole because of additional fences to be built, repaired, and replaced in the future; fourth, depreciation in the value of the whole farm because additional territory is thrown into the highway from which appellee will necessarily have to cut or otherwise remove weeds, under the state law; and, fifth, depreciation in the value of the whole land because of the additional inconvenience, labor, and cost in driving cattle from one portion of the aforesaid land across the new highway to other portions thereof. In order that the facts may be understood by the reader, there is here inserted an outline of the farm showing the six separate and distinct irregular tracts severed by the rights of way of the Chicago, Milwaukee Railway, the Chicago, Burlington & Quincy Railroad, and the two old public highways:

These railroad rights of way and the two old public highways shown upon the above plat were there before the institution of condemnation proceedings by the appellant.

After obtaining the land for $145 an acre in 1926, as before explained, the appellee claims to have improved the soil by tiling portions of the farm, and putting lime fertilizer over all or portions of the entire tract. Therefore, it is contended by appellee that the land is more valuable now than when purchased in 1926. Although witnesses admitted there has been some depreciation of land values in the community since 1926, yet some of them, testifying for appellee, declared the land taken for the new right of way purposes was worth, at the time of the condemnation, $300 per acre. Furthermore, six witnesses for appellee fixed the difference in the value of the farm immediately before and after the condemnation at from $20 to $30 per acre. On the other hand, appellant's witnesses fixed the difference in value at a greatly reduced figure. Error is assigned by the appellant because the district court improperly admitted certain evidence, erroneously instructed the jury, and also omit-

ted the giving of a necessary instruction. Those propositions will now be considered in the following order.

I. Nowhere in its instructions did the district court tell the jury on which party rested the burden of proof. This omission to thus instruct is assigned as error by the appellant.

Manifestly the district court should have placed the burden of proof in this regard upon appellee even though the cause is tried *de novo* in the district court. Even though a trial is *de novo*, the party carrying the burden of proof must fully perform his duty in that regard. The appellant, as required by the Code, started the machinery which resulted in establishing, through the aforesaid commission, the damages for condemnation purposes. But appellee was not satisfied therewith. Therefore he appealed to the district court from the finding of the commission in his attempt to increase the amount to be paid by the appellant. Thereby he assumed the burden of proof in the district court. Section 7841 of the 1927 Code reads:

"The appeal shall be docketed in the name of the owner of the land, or of the party otherwise interested and appealing, as plaintiff, and in the name of the applicant for condemnation as defendant, and be tried as in an action by ordinary proceedings."

Chapter 213 of the Acts of the Regular Session, Forty-Third General Assembly, now Section 7841-c1 of the 1931 Code, went into effect April 18, 1929, more than thirty days before the petition was filed in this cause. That chapter provides:

"A written petition shall be filed by the plaintiff on or before the 1st day of the term to which the appeal is taken, stating specifically the items of damage and the amount thereof. The defendant shall file a written answer to plaintiff's petition, or such other pleadings as may be proper."

Thus it is seen that, because the landowner seeks to change the amount of his recovery fixed by the commission, he is designated on the appeal as plaintiff and the petitioner for condemnation is referred to as defendant. Also the plaintiff is required to file a petition setting forth specifically the items of damage and the amounts thereof. Likewise, the petitioner for condem-

nation is commanded to file an answer or other pleading, as may be proper.

Why is this duty of pleading as plaintiff cast upon the appellee if the resulting burden of proof does not accordingly follow? Upon him who must affirmatively plead always falls the burden of proof. Under Section 10940 of the 1927 Code "proceedings in civil actions may be of two kinds, ordinary or equitable." Because of the statute above quoted, the proceedings in the case at bar shall be prosecuted as "ordinary." How is an action by ordinary proceedings tried? Obviously, under Section 10943 of the 1927 Code, it must be prosecuted by the plaintiff. In order for the plaintiff to prosecute the action, as thus contemplated, he must carry the burden of proof to support the allegations of his petition.

For the purpose of obtaining uniformity in proceedings, it is declared in Section 10950 of the 1927 Code:

"The provisions of this code concerning the prosecution of a civil action apply to both ordinary and equitable proceedings unless the contrary appears, and shall be followed in special actions not otherwise regulated, so far as applicable."

When interpreting the evident intent of the legislature in the premises, it is also essential to consider Section 11180 of the 1927 Code. There it is said:

"When * * * the allegation of the claim or defense to which the proof is directed is unproved in its general meaning, it shall * * * be * * * a failure of proof."

If, then, the appellee, who, under Chapter 213, had the burden of proving the amount and kind of damages suffered by him, did not perform the duty thus imposed, he could not recover. The legislature has control of these proceedings and can require pleadings and direct where the burden of proof shall be. Exercising that right, the legislature, by its acts aforesaid, clearly placed the burden of proof, as well as pleading, upon the appellee. Consequently the district court should have instructed the jury to that effect.

II. Complaint is also made by the appellant because the district court, without qualification, permitted the appellee to prove a specific sum as the increased cost demanded in the

future to remove weeds from the additional right of way along appellee's farm on the new highway.

Proper objection was made by the appellee to the introduction of this evidence. The witness answered by naming a definite sum of money. Undoubtedly it is proper for the appellee to show the difference in the value of his farm immediately before and immediately after the condemnation. When doing that, the appellee may show in evidence, if he can, the fact that there will be an additional burden upon the land after the condemnation because of the statutory duty upon him to remove weeds along the increased right of way. Nevertheless, when so doing, the appellee, under the facts and circumstances here revealed, cannot ask his witness to speculate and guess at a specific sum that it may cost to remove imaginary weeds which may never exist in fact. There was no foundation whatever laid for the introduction of this testimony, and consequently the witness should not have been permitted to answer the aforesaid question.

III. An exception is likewise taken because the district court, over appellant's objection, permitted appellee to show by witnesses the specific yearly added sum of money which it will cost the latter to hire men and furnish labor to drive his cattle back and forth over the new highway.

These witnesses were permitted to answer, and, when so doing, they stated the specific sum of $140 per year. Accordingly the appellant duly excepted. In order that the proposition may be understood more perfectly, the following facts are essential.

Before the establishment of the new highway, appellee was required to drive his cattle over what is known in the record as the "old road No. 63," from one irregular portion of the land to another part thereof. Appellee claims, however, that because the new road has been established in a place where the old road did not exist, and the old road still remains, there will be additional hazards to be met when transferring the stock from one tract to the other. So, too, it is claimed by the appellee that the cattle will be afraid of the pavement and will therefore shy away and scatter. Because of all these matters, appellee contends, it will require three extra men to drive the cattle over this new highway. Upon that basis the witnesses before mentioned declared that the outlay in money to procure those extra men would be $140 per year. As previously said under proposition

I, appellee unquestionably may show this increased burden on the farm, if it be such, in order that the jury may determine the difference in the value of the land immediately before and immediately after the condemnation. When doing that, however, appellee has no right to ask his witnesses to speculate and guess concerning the cost aforesaid, as he did in this case. The witnesses could not rationally answer the questions above named unless they knew the number and kind of cattle, their dispositions, previous habits, and so many other facts and circumstances undisclosed in this record that the present answers become absurdities. Clearly the district court should have refused to permit the witnesses to answer. Moreover, as will appear in Division VI of this opinion, questions of this kind, which ask the witness to enter the field of speculation and conjecture, never should be asked or answered.

IV. Furthermore, an objection is made by the appellant because the district court permitted witnesses to testify concerning the cost of removing and rebuilding a fence made necessary by the establishment of the new highway.

This evidence is not admissible, the appellant contends, under our holdings in Welton v. Iowa State Highway Commission, 211 Iowa 625; Dean v. State, 211 Iowa 143; Kosters v. Sioux County, 195 Iowa 214; Chicago, Northwestern Railway Co. v. Drainage District No. 5, Sac County, 142 Iowa 607; Hanrahan v. Fox, 47 Iowa 102; Kennedy v. Dubuque & Pacific Railway Co., 2 Iowa (Clarke) 521; Henry v. Dubuque & Pacific Railway Co., 2 Iowa (Clarke) 288.

Those cases, however, do not apply to the situation here presented. The cases referred to have to do with facts where the condemnation might cause the building of a new and additional fence along territory previously unexposed to a public highway, railroad right of way, or some other condemnation intrusion which leaves the farm open. Under the circumstances now being considered, however, the farm was already fenced at the place in question. The condemnation caused the removal and rebuilding of a definitely described and known fence. Here, to repeat, the land in question was fenced at the place under consideration before condemnation. Because of the condemnation, it was necessary to remove and rebuild the very same fence. After the removal and rebuilding, the burden, so far as the fenc-

ing is concerned, will remain in the future as it was in the past. That is so because the space to be fenced remains the same. When repairs and replacements are considered, the burden would be no greater in the future than it was in the past.

Generally speaking, the appellee would be entitled to damages under the condemnation in an amount measured by "the difference between the value of the whole property from which the condemned property is taken at the time of the taking and the value of the whole property from which it is taken after the taking is complete." Watters v. Platt, 184 Iowa 203.

See, also, Welton v. Iowa State Highway Commission (211 Iowa 625), supra; Dean v. State (211 Iowa 143), supra.

In order to prove these damages, the appellee has a right to show all the material facts and circumstances relating to the question. Ranck v. City of Cedar Rapids, 134 Iowa 563. It is said in that case, reading on pages 565 and 566:

"Generally speaking, the true rule seems to be to permit the proof of all the varied elements of value; that is, all the facts which the owner would properly and naturally press upon the attention of a buyer to whom he is negotiating a sale and all other facts which would naturally influence a person of ordinary prudence desiring to purchase. * * * In this estimation the owner is entitled to have the jury informed of all the capabilities of the property, as to the business or use, if any, to which it has been devoted, and of any and every use to which it may reasonably be adapted or applied."

Continuing on page 568, we further said in the Ranck case (134 Iowa 563), supra:

"The fact that the owner is denied the ordinary right to refuse to sell his property, except at his own price and on his own terms, affords no reason for awarding him more than a just compensation; but it does afford good reason why he should be given every opportunity to disclose to the jury the real character of the property—its location; its surroundings; its use; its improvements, if any, and their age, condition, and quality; its adaptability to any special use or purpose; its productiveness and rental value; and, in short, everything which affects its salability and value as between buyers and sellers generally. Though acting under legal compulsion, the owner stands in some

degree in the attitude of a seller of property, the price of which is to be fixed and settled by the jury, and, so far as he can do so within the bounds of truth and fairness, he is entitled to display all the attractive and desirable features of such property which may tend to enhance its value in the market, and thus secure the highest obtainable compensation therefor.''

Then, by way of caution, it is said in the same case, on page 569 (of 134 Iowa):

''* * * these items are not to be considered as in themselves affording a basis or measure of recovery, but as explaining and supporting the estimates made of the value of the property as it stands.''

For the purposes above expressed, and under the theory as thus limited, courts have permitted the introduction of evidence to show the value of specific improvements on the land. It has been said that the property owner may show the value of undeveloped mineral deposits, of a house, of other improvements, of a well, of a salt well, of trees, of growing crops, etc. Ranck v. City of Cedar Rapids (134 Iowa 563), supra; Kukkuk v. City of Des Moines, 193 Iowa 444; Draker v. Iowa Electric Co., 191 Iowa 1376; Hubbell v. City of Des Moines, Iowa, 166 Iowa 581; Tracy v. City of Mt. Pleasant, 165 Iowa 435; Youtzy v. City of Cedar Rapids, 150 Iowa 53; Klopp v. Chicago, Milwaukee & St. Paul Ry. Co., 142 Iowa 474; Simons v. Mason City & Ft. Dodge R. R. Co., 128 Iowa 139; Pingery v. Cherokee & Dak. Ry. Co., 78 Iowa 438; Doud v. Mason City & Ft. Dodge Ry. Co., 76 Iowa 438; Bell v. Chicago, Burlington & Quincy Ry. Co., 74 Iowa 343; Winklemans v. Des Moines Northwestern Ry. Co., 62 Iowa 11; Lance v. C. M. & St. P. R. R. Co., 57 Iowa 636; Smalley v. Iowa Pac. R. R. Co., 36 Iowa 571.

If, then, the landowner may go to that length in explaining the good points of his property before the condemnation, why should he not also, after condemnation, show, within proper limitations, the detriments thereto produced by the condemnation? To the extent that a supposed purchaser will be attracted to the property by the good points brought out before condemnation, the same purchaser will be deterred from buying the property after condemnation because of the damages caused thereby. That being true, it is important to the owner that he,

within proper limitations, be able to call the jury's attention to the undesirable conditions on the property brought about by the condemnation. Hubbell v. City of Des Moines (166 Iowa 581), supra. Otherwise private property might be taken without just compensation, contrary to Article I, Section 18, of the Iowa Constitution.

So, in the case at bar, it was proper for the appellees to introduce evidence indicating the necessity for the removal and replacement of the fence. Such fact has a direct bearing on the value of the farm immediately before and immediately after the condemnation. The cost of removing and replacing the fence had a materiality and relevancy to the final question to be determined by the jury. First, this evidence indicated that the damages to the land were substantial, as distinguished from mere nominal; and, second, the evidence was useful to explain, support, or deny "the estimates made of the value of the property as it stands." See Ranck v. City of Cedar Rapids (134 Iowa 563), supra, and other cases above cited. If, as said in the Ranck and other cases above cited, it is material to show the value of a well, tree, house, or other building when determining the value of the land before condemnation, why would it not also be material for the same purposes under the circumstances to show the value of an existing fence before condemnation? Such fence would be an existing improvement the same as a tree, well, or buildings. Assuming, then, as we must, under the cases cited, that the value of such fence existing on the land before condemnation would be material, under what logic can it be said that the cost of removing and replacing such fence would not likewise be material after condemnation to show the then value of the land? There is no logical basis for a distinction between: First, allowing evidence of said cost of removal and replacement imposed as an additional burden because of the condemnation when it is attempted to determine the value of the land immediately after condemnation; and, second, permitting the introduction of evidence regarding the value of the improvements allowed to be shown in the Ranck (134 Iowa 563) and other cases above cited in order to prove the value of the land before condemnation. See also McMahon v. Dubuque, 107 Iowa 62; Freeland v. Muscatine, 9 Iowa 461; Turner v. Hartford Fire

Ins. Co., 185 Iowa 1363; Andrews v. Western Asphalt Paving Corp., 193 Iowa 1047.

While such cost of removing and replacing the fence might not be the damage to the land, yet evidence of said cost is admissible for the purposes aforesaid, that is to say: First, to indicate, if it does, that the damages to the land were substantial, as distinguished from nominal; and, second, to assist, if it will, in explaining, supporting, or denying the estimates made of the value of the property by other witnesses. Although the testimony is thus admissible, caution must be taken by the trial court to properly instruct the jury upon the subject. It is plain that the aforesaid cost is not to be added to the damages otherwise found to exist by the jury, and the fact-finding body should be so instructed. Nor may such cost of the fence be recovered as such under the general circumstances. Again, the jury should be so informed.

Care must be taken to limit the purpose of introducing the evidence to the objects above enumerated and specified. As said in the Ranck case (134 Iowa 563), supra, reading on page 569:

"* * * these items are not to be considered as in themselves affording a basis or measure of recovery * * *."

Expenses incurred in removing and rebuilding a definite, known, and previously existing fence are quite different from those contemplated in the situation where the condemnation requires, or may require, additional hypothetical fencing at a place not previously fenced or exposed to public approach. Under the facts here considered, a definite fence existed before the condemnation and was rebuilt after the condemnation. There is no obscurity, speculation, or guess about it. When, however, an additional hypothetical fence is contemplated, at a new place created by the condemnation, another situation is presented, as shown by Dean v. State (211 Iowa 143), supra, and other cases of the same group above cited.

Whether in any event the cost of removing and replacing a fence similar to the one here considered could be recovered as a damage separate and distinct from the value of the land immediately before and immediately after the condemnation, we do not now decide or suggest. See, however, Grell v. Lumsden, 206 Iowa 166.

Hence, the district court properly received the evidence of which complaint is made, providing thereafter it correctly instructed the jury concerning the proper limitations on the use thereof. The instructions actually given, however, on the subject are not correct because they did not embody the limitations hereinabove required.

■ V. Not only did the district court admit evidence of the cost of removing and rebuilding a definitely known fence, but also that tribunal permitted evidence of a hypothetical and additional fence made necessary, or probably made necessary, because of the condemnation. Such hypothetical fence is said to have been made necessary along that portion of the land which originally abutted on the railway company right of way fence. That fence was built, maintained, and replaced by the railway company without any expense to the appellee. After the public road was constructed along the railway right of way at the place in question, there was no fence protecting appellee's fields from the public along this entire new portion of the highway.

Appellant properly objected to the introduction of this evidence, but the district court nevertheless admitted the same. This ruling is assigned as error. Obviously, under the facts and circumstances here presented, it was error under the ruling announced in Dean v. State (211 Iowa 143), supra, and the other cases previously cited in that group. As said in the Dean case, supra, the admission of evidence concerning the cost of building, repairing, and replacing a hypothetical fence was error under the facts in that case. In the Dean case (211 Iowa 143), supra, the district court instructed the jury to use the testimony concerning such cost in connection with determining the damages to appellee's farm before and after the highway was established; yet the error was not removed because of the phraseology in other portions of the instruction. This was explained by the opinion in the Dean case as follows:

"* * * the fact-finding body would surely get the idea that they were to add the fence expense to the other items of damages disclosed by the evidence."

Thereby it was said in the Dean case, supra, that the trial court permitted the jury to allow for the hypothetical fence, as such, contrary to the holding of the many cases above cited.

Likewise, in the case at bar, the district court in its instructions attempted to limit the use the jury were to make of the cost concerning the hypothetical fence. When so doing, however, the trial court in effect said to the jury:

"The amount of fence or the cost thereof, as a fence, is wholly immaterial to any issue in this case, nor should in any manner be considered by you as an element of damage in connection with the issues in this case, except as it may aid you in determining the reasonable market value of the land, following the condemnation and taking thereof of the 3.07 acres of land for highway purposes."

Manifestly the jury, after reading the foregoing instruction, naturally would get the idea that the cost of the fence and the amount thereof was material and should be considered as an element of damage when determining the reasonable market value of the land, etc. They were expressly so told. The fallacy in the instruction, according to the trial court's own theory, is in telling the jury that the cost of the fence was material to be considered as an item of damage for any purpose. Such cost cannot be considered at all by the jury as an item of damage. While evidence may be introduced, in the event now under consideration, to show that a fence may need to be built, repaired, and replaced, yet there can be no recovery for the fence as a fence, nor can such cost as such be added to other items of damages found by the jury. See all the cases on this subject above cited.

In this respect, then, the district court erred in the instruction, even according to its own theory.

VI. Would such evidence of the value of the hypothetical fence be material under any circumstances? Immediately one encounters difficulty when evidence is offered to show the value of a particular hypothetical fence.

Such evidence at once enters the field of speculation, indefiniteness, and mere guesswork. There is a striking contrast between such evidence of the cost of the hypothetical fence and evidence of the value of a known fence, as shown by Division IV above. A known fence is an improvement on the land. That known fence is definite and certain. If the known fence is destroyed, the damage to the farm would be of the same general

character as would result were an existing tree, well, house, or other building destroyed. The extent, of course, of such damage might be different in each instance supposed. Here, however, under the problem now considered, there was no fence before, and there never may be one in the future. This space which is now exposed to the public approach, previously was not in the realm to be fenced. A hypothetical fence may be constructed along this newly exposed territory; yet that will not solve the problem. Said fence must be repaired, and, sometime in the future, replaced. Even that does not furnish the basis for the solution of the difficulty, because from time to time the styles and kinds of fences will change in the future as they have changed in the past. However, the burden of fencing this new territory, if it is to be fenced, will continue always. According to the early cases, fences were built of boards, rails, or stone. Now fences are constructed of barbed wire, woven wire, etc. Again, the fences of today are supported by wooden, steel, or cement posts. But in the future there is no way of knowing with what such fences will be built or supported. A man who owns or is to buy the land in question always must be faced with the additional burden of possibly having to fence this newly exposed territory. Today he may place thereon an ordinary fence. Tomorrow, he may construct at that place a more extensive and efficient fence. Yet, whatever fence is built now or will be constructed tomorrow, the owner of the land in each instance must at all times bear the increased burden cast upon the farm by the condemnation because the territory in question does or may require fencing while before it needed no fence. Suppose the cost of an ordinary fence is taken as a basis, and that cost compared with the net income from the farm, and then the ratio of the fence cost to the net income be compared with the total value of the land. Nevertheless, the problem is not solved. First, there is no solution because the result of the aforesaid calculation would not determine the problem if a hog-tight or any other kind of fence, rather than an ordinary one, were considered. Moreover, in the second place, under the problem assumed, the value of the land is a factor, but we do not know that value because the very purpose of the mathematical demonstration is to find such value of the land.

If steel or cement posts were used instead of wooden posts

another factor is introduced into the problem. Furthermore, the owner may never fence this new territory. Some purchasers might not discount the value of the land because this new territory may bear an additional fencing burden. Others would object because the new territory may have to bear a new fence burden. As to what number of purchasers would thus object is not known. The mere attempt to find a basis for the introduction of such testimony involves so many theoretical elements that the result is utter confusion. It is necessary to base hypothesis upon hypothesis and theory upon theory ad infinitum. Thus, under the circumstances, the evidence of the hypothetical fence is not helpful: First, to indicate that the damages are substantial as distinguished from nominal; second, to use in explaining, supporting, or denying the estimates made of the value of the land by other witnesses; or, third, for any other purpose.

Therefore, the evidence of the cost of the hypothetical fence is not admissible, as shown by Dean v. State (211 Iowa 143), supra; Welton v. Iowa State Highway Commission (211 Iowa 625), supra; Chicago, Northwestern Railway Co. v. Drainage District No. 5, Sac County, 142 Iowa 607; Hanrahan v. Fox, 47 Iowa 102; Kennedy v. Dubuque & Pacific Railway Co., 2 Iowa (Clarke) 521; Henry v. Dubuque & Pacific Railway Co., 2 Iowa (Clarke) 288. In determining the value of the land after the condemnation because the new territory must be fenced, an approximation thereof is all that can be made by the jury. Kosters v. Sioux County (195 Iowa 214), supra. We said in the Kosters case that the jury "should not have been allowed to take (such evidence) into consideration, in determining the difference in the value of the farm before and after the taking." So, too, in Welton v. Iowa State Highway Commission (211 Iowa 625), supra, reading on page 633:

"This (the introduction of the evidence here proposed) again allowed the jury to enter the realm of speculation and conjecture. Fences are of various kinds and costs, and may or may not be needed, according to conditions."

Likewise, in Dean v. State (211 Iowa 143), supra, we declared such evidence to be immaterial. Consequently the district court erred in admitting the evidence.

In order that there may be no misunderstanding, it is again

repeated that it is proper to introduce evidence indicating to the jury that the condemnation has opened up new territory to the public approach which may be fenced, and that such fence may be repaired and replaced. Dean v. State (211 Iowa 143), supra. But evidence of the value of such hypothetical fence may not be introduced into the record. The purpose of introducing evidence of the fact that a fence may be built, repaired, and replaced is to assist the jury in finding the value of the land immediately before and immediately after the condemnation.

Because of the errors above found, the judgment of district court should be, and hereby is, reversed.—Reversed.

STEVENS, DE GRAFF, EVANS, MORLING, and GRIMM, JJ., concur.