CAROLINE MORRISON, Administratrix, Appellee, v. BURLINGTON, CEDAR RAPIDS & NORTHERN RAILWAY COMPANY, Appellant.

| 84 | 663 |
|----|-----|
| 95 | 58 |
| 84 | 663 |
| 105 | 591 |
| 84 | 663 |
| f131 | 683 |
| 84 | 663 |
| 140 | 194 |

1. **Railroads**: INJURY TO STOCK: NEGLIGENT CONSTRUCTION OF GATE: PLEADING. A petition alleging that, by reason of the negligent construction of a gate of unsound and unsafe material in the defendant's right of way, the plaintiff's colts escaped from a pasture through said gate upon the defendant's track and were killed; that the notice and affidavit required by law had been served upon the defendant; that said colts were of a value named, and asking judgment in double said sum, is sufficient to show a cause of action under section 1289 of the Code, though such statute is not specifically pleaded.

2. **Practice**: SUBJECT OF TESTIMONY VIEWED BY JURY: DISCRETION OF COURT. The gate in question being a subject of testimony upon trial, it was a matter within the discretion of the court whether to permit the jury to be taken to view the same.

3. ——: ——: PURPOSE. The purpose for which a jury may be permitted to view an object which is the subject of testimony in a cause is to enable them to better understand the testimony of witnesses respecting such object, and thereby assist them to more intelligently apply the same; and an instruction which permits them to give weight to their own observations of such object as evidence, upon which to determine, in connection with the testimony, the issues in the cause, is erroneous.

4. ——: ——: VALUE: EVIDENCE. In an action by an administrator against a railroad company for the negligent killing of stock belonging to the estate, the appraisement of such property returned by him as administrator, is not competent as evidence of the value of said property, except to rebut the testimony of the persons making such appraisement, if called as witnesses upon that question.

5. ——: ——: ACTION BY ADMINISTRATOR. An administrator is an *owner* of property belonging to the estate he represents within the meaning of section 1289 of the Code, providing for the liability of railroad companies to the owner of stock injured.

6. Practice: INSTRUCTION REFERRING JURY TO PLEADINGS AS TO ISSUES INVOLVED. An instruction which referred the jury to the pleadings for the purpose of ascertaining the issues in a cause, *held*, not erroneous in view of its being preceded by a full statement of the allegations of the petition and the denials of the defendant.

7. Railroads: DEFECTIVE FENCE: NOTICE. The plaintiff's action being based upon the unsafe condition of the fence as originally constructed, *held*, that proof that the defendant had knowledge of its defective condition was unnecessary.

*Appeal from Grundy District Court.*—Hon. C. F. Couch, Judge.

Tuesday, February 9, 1892.

.Action to recover for three colts killed by an engine and train of cars operated by the servants of the defendant on its track, by reason of the unskillful, negligent, careless and defective construction of a gate by the defendant in its right-of-way fence at a private crossing, and by reason of said gate being of defective and unsound material, in consequence of which the colts escaped from an adjoining pasture through said defective gate upon the defendant's track. The defend-

ant answered denying generally.   From a verdict and judgment for the plaintiff, the defendant appeals. *Reversed.*

*Tracy & Leonard* and *Rea & Hayes*, for appellant.

*R. J. Williamson* and *Boies, Husted & Boies,* for appellee.

GIVEN, J.—I. The first question discussed is whether the petition brings the case within the provisions of section 1289 of the Code; the appellant's contention being that it does not, because it is not alleged that the stock was running at large, nor that it was injured or killed by reason of the want of a fence, and does not refer to said section 1289. An examination of the petition and exhibits leads us to the conclusion that it shows a cause of action under that section. It shows that the colts escaped from a pasture through a defective gate upon the defendant's track, and that the defendant had carelessly and negligently constructed the gate in an unskillful manner and of unsound and unsafe material.   It is certainly clear from this that the colts were running at large, and that they were killed for want of a fence; for, if the gate was as alleged, it was as if there was no fence.   The petition shows the service of notice and affidavit, as required by said section, demanding three hundred and thirty-five dollars, the alleged value of the colts, and asking judgment for double that amount, thus showing very clearly that the action was intended to be based upon said section.   These allegations bring the case within the statute.   The facts that negligence is alleged in the construction of the gate, and that the statute is not specifically pleaded, do not take it out of the statute. This conclusion answers the further complaint that the court erred in admitting the notice and affidavit served upon the appellant, as required by said section.

1. RAILROADS: injury to stock: negligent construction of gate: pleading.

II. "After the close of the plaintiff's evidence in chief, the plaintiff's attorneys orally requested that

2. PRACTICE: subject of testimony viewed by jury: discretion of court.

the jury be taken by the sheriff to view the gate and place where the accident occurred. * * * The defendant objected, which objection was overruled, and the defendant. excepted, and the court sent the jury to view the gate, to which the defendant objected and objection overruled." Section 2790 of the Code provides that "whenever, in the opinion of the court, it is proper for the jury to have a view of the real property which is the subject of the controversy, or of the place in which any material fact occurred, it may order them to be conducted in a body, under the charge of an officer, to the place which shall be shown to them by some person appointed by the court for that purpose." In this instance, "the court sent the jury to view the gate." The gate was not real property, the subject of the controversy, nor a place in which any material fact had occurred. In *Nutter v. Ricketts*, 6 Iowa, 92, 96, the court permitted the jury to go out into the courthouse yard and see the horse in controversy. It is said: "There is no objection, in principle, to a jury seeing an object which is the subject of testimony. By this means they may obtain clearer views, and be able to form a better opinion. Small articles, the subject of testimony, are not infrequently introduced to the inspection of the jury, and no reason forbids the same course in relation to larger ones, other than the practicability and convenience of so doing. The practice lies in the discretion of the court." This gate was the subject of testimony, and it was within the discretion of the court whether to permit the jury to view the gate or not.

III. It is not claimed that there was an abuse of

3. ——: ——: purpose.

this discretion, but the contention is that the court erred in giving the following instruction:

"12. You have been permitted by the court to go to the place where the accident in question is claimed to have occurred for the purpose of examining the gate in controversy. You are instructed, gentlemen, that the only purpose of this examination, and the only purpose for which you can consider such examination, is to aid you in determining the issue, with the other evidence in the case, as to whether or not the material which went into said gate in its construction was defective, and whether or not the manner of its construction was defective; and in considering this you should take into consideration the length of time which has elapsed since the accident and the time of your examination."

Whether the view was had under authority of section 2790 or of *Nutter v. Ricketts*, the same rule will apply as to the purpose of the view. In *Close v. Samm*, 27 Iowa, 503, 508, the court says, as to the purpose: "It seems to us that it was to enable the jury, by the view of the premises or place, to better understand and comprehend the testimony of the witnesses respecting the same, and thereby the more intelligently to apply the testimony to the issues on trial before them, and not to make them silent witnesses in the case, burdened with testimony unknown to both parties, and in respect to which no opportunities for cross-examination or correction of error, if any, could be afforded either party." In that case the jury were instructed to decide "from all the evidence in the case, and all the facts and circumstances disclosed on the trial, including your personal examination." This instruction was held to be erroneous. In this case the jury were told that the only purpose for which they could consider the examination "is to aid you in determining the issue, with the other evidence in the case, as to whether or not the material which went into said gate in its construction was defective, and whether or not the manner of its con-

struction was defective,"—thus permitting the jury to
give weight to their own observations, instead of using
them for the more intelligent application of the testi-
mony. See, also, *Harrison v. Iowa Midland Ry. Co.*,
36 Iowa, 323. In *Thompson v. City of Keokuk*, 61 Iowa,
187, an action to recover damages for the change of
grade, the jury were instructed to "carefully weigh
the evidence in the light of your inspection of
the premises." This was approved. The very pur-
pose of the inspection was to enable them to the
better understand, apply and weigh the evidence.
The appellee insists that as we have not all the
evidence before us we must assume that there was
evidence that the gate was in the same condition as
at the time of the accident, and that it does not appear
that there was any conflict as to the kind of material,
or that the defendant was prejudiced. We have suffi-
cient of the evidence to show that it was error to
instruct the jury to decide the questions as to the gate
upon anything else than the evidence introduced upon
the trial. We have seen that the purpose of permitting
a view is to enable the jury, aided by the view, to bet-
ter understand and apply the testimony. It is evident
from the cases that courts are not always mindful of
the purpose, and sometimes permit views where not
necessary. It is only when the testimony cannot other-
wise be so well understood and applied that a view
should be permitted. If the testimony can be readily
understood and applied from the language in which it
is expressed, aided by maps, plats or like evidence,
there is no necessity for a view, and to permit it often
leads to the question whether the jury have not allowed
their own observations to have the effect of testimony.
As already stated, it is not claimed that there was an
abuse of discretion in permitting this view, but the ques-
tion is as to the correctness of the instructions. When a
view is permitted, the jury should not only be instructed
as to the purpose, but cautioned not to consider their

own observations as evidence.. It is upon the evidence, as understood in the light of their view, that they must decide. If a party has failed to prove a material fact, the jury must take the evidence as it is, even though their view convinces them that the fact exists. To find the fact upon their own observation is not to find it upon evidence, while if it had been the subject of testimony the other party might show the finding to be wrong. In this instruction the jury were told that the only purpose of the examination, and the only purpose for which they could consider it, "is to aid you in determining the issue, with the other evidence in the case."

They were not told that the only purpose was to enable them to better understand and apply the testimony, but it was to aid them in determining the issue, with the other testimony. From this language the jury must have understood that they were to give to their own observations, as to the construction of the gate and the materials used, the place and weight of evidence. We think the giving of this instruction was error prejudicial to the appellant.

IV. The appellant complains of the ruling refusing to admit the appraisement returned by the administratrix showing the value of the colts, claiming that it was competent evidence for the jury to consider. The appraisement is for the purpose of an accounting with the administratrix, and is not evidence against the estate in an action like this, unless to rebut the evidence of the persons making the appraisement, if called as witnesses to the question of value.

4. —: —: value: evidence.

V. It is further insisted that the liability under section 1289 is to the owner of the stock, and that the administratrix is not the owner within the meaning of the statute. Such a construction would do violence to the manifest intent of the legislature, and leave estates without the remedy

5. —: —: action by administrator.

accorded in this section.    We are in no doubt but that
the administratrix was the owner of these colts within
the meaning of the statute.

VI. The appellant complains of the refusal to give
the first and second instructions asked, and of the first
given by the court, upon the ground that
the jury were referred to the pleadings for
the purpose of ascertaining what were the
issues.    The instruction given was pre-
ceded by a very full statement of what was alleged, and
that the defendant denied all of those allegations,
except as to its corporate capacity.    The instruction
given, considered in connection with this statement,
fully presented the issues by stating what was alleged
and what was admitted and denied.    The case is dis-
tinguishable from *Porter v. Knight*, 63 Iowa, 365, and
*Gorman v. Ry. Co.*, 78 Iowa, 518.

6. PRACTICE: instruction referring jury to pleadings as to issues involved.

In the fourth instruction the court directed the
jury to take into consideration "the place where the
gate was erected, the purpose for which it was erected,
and the danger or want of danger to animals running
at large, which should escape on said railway track."
We fail to discern wherein this instruction could lead
the jury to ignore a lawful or reasonably sufficient gate.
What would be a sufficient gate at one place might not
be at another.    The place, purpose and liability of
animals to get upon the track at that place were proper
to be considered in determining whether the gate was
sufficient.    We think the court instructed correctly in
the fifth and sixth paragraphs as to the care required
of the defendant in constructing the gate, and that
there was no error in giving these instructions, nor in
refusing the fourth, fifth and sixth asked by the appel-
lant.    Our conclusion that the action is under section
1289 answers the objection to the thirteenth paragraph
of the charge, and to the refusal to give the seventh
instruction asked.

VII. The appellant asked the court to instruct "that the plaintiff must show that the defendant had knowledge, actual or implied, of said defective construction, and a reasonable time thereafter to properly construct 'said gate."

7. RAILROADS: defective fence: notice.

Gates at a private crossing are a part of the fence. *Mackie v. Central Ry. Co.*, 54 Iowa, 540. The fence contemplated is such as is reasonably sufficient to prevent live stock from getting on a railway track. *Shellabarger v. Chicago, R. I. & P. Ry. Co.*, 66 Iowa, 18. It must be sufficient to turn live stock of any kind. *Lee v. Minneapolis & St. L. Ry. Co.*, 66 Iowa, 131. This action is not that there was no fence, nor for a failure to keep the fence in repair, but that the fence as originally constructed was unsafe; hence, no evidence of knowledge is required as in the cases of a failure to repair.

The case being under section 1289, and the defendant having failed to pay upon service of notice and affidavit as prescribed in that section, the plaintiff was entitled to recover, if at all, double damages; hence, there was no error in refusing the seventeenth instruction asked, nor in instructing as the court did upon that subject.

These considerations dispose of all the questions presented. For the error in giving the twelfth paragraph of the charge, we think the judgment of the district court must be REVERSED.