HENRY BENNETT, Appellee, v. CITY OF MARION, Appellant.

Action for Nuisance: RECOVERY OF DAMAGES; CONTINUING NUISANCE:

1 LIMITATION.   Where a system of sewerage has been adjudged to be a continuing nuisance and subject to abatement, and where the city can remedy the nuisance without going off its own premises, the same constitutes a continuing nuisance and damages within the statutory period of limitations may be recovered, though the original cause of action is barred.

Same: SECOND RECOVERY.   Where a nuisance is continuing, one
2 recovery for injury will not preclude recovery for damages suffered after the first judgment.

Adjudication: EVIDENCE OF: · INSTRUCTION.  Where it has been adjudicated that a continuing nuisance exists, and that fact is established in an action for damages subsequently suffered, evidence that the nuisance is permanent is immateria , and an instruction that the character of the nuisance is established by such adjudication and the plaintiff is entitled to damages. is held correct.

Evidence: FORMER JUDGMENT: ADMISSIBILITY OF: OBJECTION THERETO MUST BE SPECIFIC.  Where a judgment is properly offered in evidence for the purpose of showing a prio adjudication for damages for the continuance of the same nuisance, a general objection thereto will not raise the question of its inadmissibility because it contains the amount of the former recovery, and same will not be considered on appeal.

Same: An objection to the admission of a former judgment in such a case on the ground that it was reversed on appeal, cannot be first urged on appeal.

Same: ADMISSION OF ANOTHER PETITION: ERROR.  The admission of a petition embracing the same cause of action, but filed in another court and upon which no action has been taken, was prejudicial error.

Same: MEASURE OF DAMAGES.  Ordinarily the measure of damages to a farm by·reason of a nuisance is the depreciation in the rental value of the farm as a whole, and evidence that some portion is as productive after the establishment of the nuisance as before, should not be received.

Same: HYPOTHETICAL QUESTIONS.  Hypothetical questions on the depreciation in value of the property affected by the nuisance, which are not supported by the proven facts, should not be propounded or answered.

Cross Examination of Expert Witness.  The liberty allowed in cross-examination of experts is largely discretionary with the court, and for the purpose of testing his knowledge or the weight of his testimony almost any state of facts may be assumed.

Assignment of Error: MUST BE SPECIFIC.  An exception to an instruction must specifically point out the error complained of.

*Appeal from Lynn District Court.*—Hon. H. M. Remley, Judge.

Thursday, February 5, 1903.

ACTION at law to recover damages for a nuisance erected and maintained by defendant. Answering the petition, defendant pleaded that the erection which caused the nuisance was permanent in character, was established in the year 1893, and that plaintiff's action is barred. It also pleaded former recoveries by plaintiff for the damages caused him, in bar of his present action. Some other defenses were pleaded, which will be noticed in the body of the opinion. The case was tried to a jury, resulting in a verdict and judgment for plaintiff, and defendant appeals.—*Reversed.*

*Voris & Haas* for appellant.

*Rickel, Crocker & Tourtellot* for appellee.

DEEMER, J.—This action was brought October 17, 1900, to recover damages for a nuisance created by defendant which caused injuries to plaintiff's farm. It appears that defendant city established a sewer system which emptied into what is known as "Indian Creek," which flowed through plaintiff's premises; that the mouth of the sewer was near the boundary of plaintiff's land; and that the sewage escaped into Indian Creek and was carried thence by the waters of that creek over and across the land belonging to plaintiff. It further appears that the discharge from the sewer polluted the water of the creek, rendered it impure and unwholesome both to stock and human beings, poisoned the atmosphere, and caused deposits of filth to accumulate on the banks of the creek, all to plaintiff's great damage. Evidence was also adduced of prior actions against the city brought by plaintiff to recover damages for the nuisance, and of a suit in equity to permanently enjoin the nuisance, all of which resulted favorably to plaintiff. Defendant claimed that the waters of the creek were befouled by other causes than the discharge of the sewage, and introduced evidence tending

to show that emptying of the sewage into living water did not render it impure; but it relied largely in the trial court, and places its principal reliance for a reversal here, on the ground that plaintiff's action is barred by the statute of limitations.

Proper determination of this principal point involves a consideration of some facts additional to these already stated. The city of Marion has a population of about 6,000. It planned its sewer system with reference to an ultimate outlet into Indian creek, although, as a matter of fact, the sewage was gathered and conducted through pipes into a mainpipe or sewer which emptied into a basin some twenty rods from Indian creek. From that basin it overflowed and ran into a small spring brook known as "Gray's Run," and from Gray's run it ran into Indian creek, and thence across plaintiff's farm. The pool into which the sewage was first discharged was some distance from plaintiff's land. Originally the discharge was into Gray's run, and, to remedy the supposed nuisance, defendant dug the basin above referred to, hoping that this would afford some relief, but all to no purpose. The establishment of this sewer system provoked considerable litigation, and at least two of the cases reached this court. See *Hollenbeck v. City of Marion*, 116 Iowa, 70; *Bennett v. City of Marion*, 102 Iowa, 425.

I. Recurring now to the main point made by defendant,—that the action is barred by the statute of limitations, because the nuisance is permanent in character,—

1. RECOVERY of damages: continuing nuisance: limitation. it will be noticed that, while the system may be said to be permanent (that is, that it was not established for a temporary purpose), yet it also appears that the injury is not beyond repair. Taking judicial notice, as we must, of the well-known advances in sanitary science, it requires no evidence to show that the nuisance can be easily and successfully abated by the use of modern appliances. Indeed, it appears from

the record in this case that a court having jurisdiction has ordered the abatement of the nuisance, and that its decree has not been appealed from.    Moreover, plaintiff has heretofore recovered damages on the theory that the nuisance was a continuing one, and these judgments have not been challenged by appeal.    Defendant relies on *Powers v. City of Council Bluffs*, 45 Iowa, 652, and other like cases.    But in that case, as pointed out in *Drake v. Railway Co.*, 63 Iowa, 302, the injury was beyond the city's power of repair.    The remedy to be applied there, if any, was the construction of a wall on plaintiff's premises, where defendant had no right to go.    Here the remedy could be applied on defendant's own premises, and there can be no doubt, we think, of its duty to abate the nuisance.    See, also, as supporting these views, *Shirely v. Railway Co.*, 74 Iowa, 169; *Hunt v. Railway Co.*, 86 Iowa, 15; *Loughran v. City of Des Moines*, 72 Iowa, 382; *Miller v. Railway Co.*, 63 Iowa, 680; and *Hollenbeck v. City of Marion, supra*.

We reach the conclusion that the nuisance in question was a continuing one, and that plaintiff was entitled to all damages within the statutory period of limitations not theretofore recovered by him, notwithstanding the fact that the original cause of action was barred, and this for the reasons:    First, that two or more courts have held it to be a continuing nuisance, and one has held it to be temporary and subject to abatement (*Plate v. Railroad Co.*, 37 N. Y. 472); and, second, for the further reason that defendant may remedy and abate the nuisance without going off its own premises to do so.    These facts clearly distinguish the case from *Baldwin v. Light Co.*, 57 Iowa, 51, and other like cases.    See, also, *Bare v. Hoffman*, 79 Pa. 71; *Uline v. Railroad Co.*, 101 N. Y. 98 (4 N. E. Rep. 536, 54 Am. Rep. 661); *Baltimore & P. R. Co. v. Fifth Baptist Church*, 108 U. S. 317 (2 Sup. Ct. Rep. 719, 27 L. Ed. 739).

II.  Defendant also claims that the prior recoveries had by plaintiff constituted an adjudication binding on him, and that he should have claimed in the one suit all damages suffered by him.  This point is disposed of by what we have already said.  See, also, *Hollenbeck v. City of Marion, supra.*

*2. SAME: second recovery.*

III. ,  These thoughts also dispose of defendant's contention that the court erred in not submitting the questions of *res adjudicata* and the statute of limitations to the jury.

IV.  Defendant offered witnesses to prove that the sewer system was permanent, but the trial. court would not permit this to be done, remarking that "the court holds that the injury complained of is not because of the structure of the sewer and its permanent character, or the manner of its construction, but consists in the improper use of the sewer, which caused and continued the nuisance complained of, and that the evidence offered by the defendant is immaterial, and the court refuses to allow him to offer it."  In its instructions the court said: . "The evidence shows, without conflict, that it has been adjudicated between plaintiff and defendant, that said sewer as maintained by defendant near the farm of plaintiff, was a public and private nuisance, and befouled the waters of said Indain creek, and was injurious to the enjoyment of the said premises of plaintiff; and you are instructed that these facts are fully established by said adjudication set out in said decree introduced in evidence, and because of said facts it is established the plaintiff is entitled to recover herein; and it will be your duty to .determine from the evidence before you what amount of damages the plaintiff has sustained by reason of the acts of the defendant, and your verdict must be in at least nominal damages, and not be more. than the rental value of said premises from October 20, 1896, to November 22, 1899."  From what has been said already, it is manifest that we regard these rulings correct.

*3. ADJUDICATION: evidence of; instruction.*

V.    Plaintiff introduced in evidence the record of certain judgments for damages obtained by him for the continuance of the same nuisance. These were objected to 4. EVIDENCE: generally.    As defendant was relying on these same judgments, and had pleaded them in its answer, no prejudice resulted. It is claimed that, in view of the admissions in the pleadings, they should not have been admitted, and that the only purpose in admitting them was to prejudice the jury, by showing the amounts which had heretofore been allowed to plaintiff for the wrong complained of.    The difficulty with this contention is that no such objection was made in the lower court.    These judgments, as well as the decree in the equity case to abate the nuisance, were admissible in evidence for the purpose of showing an adjudication of the question of nuisance; and, as defendant had admitted the recovery of the judgments and decree, there was no error in permitting them to go to the jury.    Defendant might have raised the point on which it now relies by objections to the evidence when offered, or by requests for instructions, but, as it did not do so, it is in no position to complain.    The amount of the recovery in these prior cases was not material, and, if the judgments had been offered for the purpose of showing the allowance made to plaintiff in the former actions, they should not have been received; but this was not the purpose of the evidence.    Had defendant asked an instruction to the effect that the judgments should not be considered in estimating the amount of plaintiff's damage, it woul l have been the duty of the court to give it.    No such request was made, however.

It is also contended that one of these judgments was reversed in this court in a (102 Iowa, 71) case above referred to.    That point was not made in the trial court, nor was its attention called to the fact, as now claimed.    Indeed, we have no means of

*Margin note beside paragraph 4:* former judgments; admissibility of: objection thereto must be specific.

*Margin note near bottom:* 5. SAME:——.

arriving at the truth of this claim, save by inference from the amount and date of the judgment. But the point should have been made in the trial court, and a ruling had thereon, and cannot be presented here for the first time. The petitions filed in the cases were also admissible for the purpose of showing that the issues were the same as involved in this case.

· Plaintiff also introduced a petition filed in the superior court of the city of Cedar Rapids in an action brought by him against the city for damages covering the same period as that covered by the petition in this case. We do not know why this was offered nor why it was admitted in evidence. No action seems to have been taken on that petition, and, if there had been, it would have been a bar to plaintiff's suit. It was objected to as incompetent, immaterial, and foreign to any issue in this case, but the objection was overruled. We think it should have been sustained. It covered the same period time as the petition in the case at bar, and, as no judgment has ever been rendered therein, it was entirely irrelevant to any issue in the case. The only purpose in admitting it was to get plaintiff's declaration in his favor as to the character of the nuisance before the jury, and the effect thereof was manifestly prejudicial.

6. SAME: admission of another petition: error.

The action is for damages for depreciation in the rental value of the farm from October 20, 1896, down to and including November 22, 1899. Defendant offered to show that during the time in question there were as many animals pastured on the land as the grass would sustain, and that the stock on the farm actually consumed all the grass that grew. In response to objections interposed by plaintiff, the court said: "I tell you now it is no matter what it was worth to Mr. Bennett. He may have lost money farming every year there before or since. That has nothing to do with this case,—what they are worth in the market, and what he could have

7. SAME: measure of damages.

rented them for before, and what he could have rented for afterward. The objection is sustained." These rulings are challenged. Plaintiff's land consisted of one hundred and forty acres. It was adapted for use as a dairy and stock farm. There was a house upon the land, occupied by a tenant. Forty-five acres of the land were in cultivation, twelve or fourteen acres were used for hay, and the residue for pasturage. The questions propounded to the witnesses, which were not allowed to be answered, related to the use of the pasture land, and tended, perhaps, to show that plaintiff had as much return from the pasture after the establishment of the sewer as before.

But this was not the real matter of the issue. The question presented was the deterioration, if any, in the rental value of the farm as a whole by reason of the establishment of the nuisance. Defendant's witnesses were allowed to answer questions calling for their opinions on this subject, and this, we think, is all that it was entitled to. It was not permitted to go into the question as to the returns plaintiff actually had from some specific part of the land, and the ruling denying it this privilege was unquestionably correct. Plaintiff might take the chance of disease to his stock, or that of others pastured by him, if he saw fit; but, having taken the chance, defendant should not now be permitted to show that a specific part of the land was not damaged because plaintiff used all of it as before the sewer was established. The inquiry was the damage done the entire farm by reason of the depreciation in its rental value, and not primarily the injury done a particular forty acres. Doubtless such an inquiry would be proper on cross-examination, but it would not be admissible as substantive proof either for or against the plaintiff. Surely it will not be contended that plaintiff could prove the amount of depreciation in rental value by showing that he was not able to use the pasture, and that he lost the return he might have gained from

pasturing stock belonging to himself or to others. The court would, no doubt, have said, had such testimony been offered that this was not the method of proving depreciation in rental value; and so, when defendant offered its evidence, it could not show that plaintiff in fact used part of the farm for pasture, and that the stock ate up all the grass. The true measure of damages in such cases is wel understood. Ordinarily it is the depreciation in the rental value of the farm. See, as sustaining our conclusions on this branch of the case, *Penn v. Taylor*, 24 Ill. App. 292; *Ottenot v. Railway Co.*, 119 N. Y. 603 (23 N. E. Rep. 169); *O'Connor v. Railroad Co.*, 56 Iowa, 735; *Ferguson v. Manufacturing Co.* 77 Iowa, 576.

Complaint is made of certain hypothetical questions put to plaintiff's witnesses on depreciation in value, and on the effects to be apprehended from the discharge of the

8. SAME: hypo-  sewage into the stream. Two of these were
thetical
questions.  as follows: "Q. Now, assuming that the sewage comes from the following sources: The Daniels Hotel, accommodating one hundred people per day, including employes and guests, and the Biggs House, accommodating a large number of persons, together with all the principal business houses of the city, numerous private residences, the Chicago, Milwaukee & St. Paul Railway depot and round house and shops, employing a great number of people, and the courthouse and county offices, the public school,—that is, the sewage from all these sources empties into the creek, and constituting one-third to one-fourth of it,—what effect would it have on the water, used for stock purposes?" "Q. But assuming that this creek was in the condition that I have stated to you in my prior question, and assuming that you did not have any stock, but three or four or five old horses, and that you could not get stock to pasture, and that these bad odors were there, and that you could not get a tenant to come on there, on account of these difficulties, what would you think it would be worth

under these circumstances?" The first of these questions was propounded to at least two witnesses. Both were objected to because assuming a state of facts not shown in the evidence. The objections were overruled, and the witnesses were permitted to answer. Neither question should have been propounded, as there was no testimony in the record on which to base them. There was, it is true, testimony in support of some of the assumptions of fact, but not all. The first assumes many things not shown by plaintiff, except by allegations in his prior pleadings, which were not competent for that purpose, and there is no evidence whatever in support of the second.

Error is also predicated on the admission of evidence from experts regarding the probable effects of the deposit of sewage in the running stream. That point is ruled by *Hollenbeck v. City of Marion, supra,* and need not be further considered.

The cross-examination of some of defendant's witnesses is complained of. Great liberty may be allowed in the cross-examination of experts, and counsel need not, in 9. CROSS examination of expert witness. such cases, be confined to the exact case made, but, for the purpose of testing the witnesses' knowledge and the weight of their evidence, may assume almost any state of facts. The matter, in any event, is so largely discretionary with the trial court that we do not ordinarily interfere.

VI. Defendant contends that the eighth instruction given by the trial court was erroneous. Its assignment of error reads: "The court erred in giving the jury his 10. ASSIGNMENT of error: must be specific. instruction numbered eighth." This is insufficient to present any question for consideration. *Fitch v. Traction Co,* 116 Iowa, 716. The instruction embraces three or more distinct propositions, and the assignment does not point out the exact error complained of. Two or three distinct propositions are made in argument regarding this instruction, and the

rule is well settled that the assignment must point out the very error complained of. We may say that we have examined the instruction in the light of counsel's argument, and see no error therein. It is materially different from the one condemned in *Hollenbeck v. City of Marion, supra.* The damages were confined to the depreciation in the rental value of the premises in the condition they were in when the nuisance was created. The instruction has support in *Railway Co. v. Wallace,* 74 Tex. 581 (12 S. W. Rep. 227), and it did not allow plaintiff to recover for imaginary uses to which the property might be put in the future.

We have now examined all the points made by defendant, and find no error, except as is stated. But for the reasons pointed out, the judgment must be REVERSED.