J. GEORGE DEAN et al., Appellees, v. STATE OF IOWA et al., Appellants.

No. 40563.

144

NOVEMBER 18, 1930.

*Maxwell O'Brien,* Assistant Attorney-general, and *Addison & Smedal,* for appellants.

*Welty, Soper & Welty* and *C. G. Lee,* for plaintiffs, appellees.

KINDIG, J.—J. George Dean and Caroline M. Dean, plaintiffs and appellees, are the owners of a farm in Story County. This

farm consists of 311 acres. On June 3, 1929, the state of Iowa, through its highway commission, defendant and appellant, appropriated by condemnation approximately 7.99 acres of that land for highway right of way purposes. This highway under consideration crossed appellees' land in an easterly and westerly direction, in such a manner as to leave approximately 140 acres on the north side thereof and about 170 acres to the south of it. The commission, on June 19, 1929, assessed the damages thereby accruing to appellees in the sum of $3,801. An appeal was taken by the appellees from the finding of that commission to the district court, where the hearing on the disputed question of damages commenced before a jury January 31, 1930. As before suggested in the preamble to this opinion, that body returned a verdict for appellees in the sum of $8,500. From the judgment thereon entered by the district court, the defendants State of Iowa, state highway commission, and R. W. Nebergall, sheriff of Story County, appeal.

Midland Mortgage Company, of Cedar Rapids, Iowa, and John Hancock Mutual Life Insurance Company, of Boston, Massachusetts, defendants, did not appeal, and therefore are designated appellees: but hereafter during this discussion, for convenience, "appellees" will refer to J. George Dean and Caroline M. Dean; while the word "appellants" refers to the State of Iowa and the state highway commission of Iowa.

Numerous grounds for reversal are set forth by the appellants, but, because of our conclusion in the premises, it is necessary to consider only two of them.

I. It is said by appellants that the district court erred during the trial in admitting evidence concerning the cost of fencing appellees' land along the new highway. According to appellees'

petition, the establishment of the road in question made it necessary for them to build and maintain 534 rods of extra fence. When introducing evidence in their own behalf, the appellees, by several witnesses, sought, over appellants' objections, to show the itemized cost of building such fence. The district court admitted the evidence. Responding to that evidence, the district court, in its charge to the jury, among other things stated:

"In determining the difference in the fair and reasonable

146

market value of plaintiffs' farm before and after the establishment of the highway in question, you are authorized to take into consideration, along with other facts and circumstances, * * * the reasonable cost of necessary fencing occasioned by the taking of the right of way.''

Thus, appellants contend, the jury, in fixing appellees' damages, naturally would believe that they could properly take into consideration the fence cost, as such. Under the law in this state, the cost of fencing, as such, cannot be considered by the jury. Nevertheless, in determining the minimized value caused appellees' farm by the establishment of this road, the jury may properly consider the fact that a fence will necessarily have to be built, repaired, maintained, and replaced. But in doing that, the necessity of the fence must be considered in its tendency to minimize the value of the farm, rather than as an independent and separately itemized item of damages. The question is not what the particular fence desired by appellees at this time may cost; but rather, the underlying inquiry is whether the farm as a whole, in view of the purposes for which it is adapted, will be minimized in value because extra fencing may be required and such fence might need to be repaired, maintained, and replaced. Having heard the evidence regarding the cost which the fence proposed by appellees would involve, and having received the district court's instruction relating thereto, the jury naturally would be led away from the ultimate goal to be reached by them, and induced to consider that cost, as such, as an added element to appellees' damages. That the jury should not do. *Kosters v. Sioux County,* 195 Iowa 214; *Chicago & N. W. R. Co. v. Drainage Dist.,* 142 Iowa 607; *Hanrahan v. Fox,* 47 Iowa 102; *Kennedy v. Dubuque & Pac. R. Co.,* 2 Iowa (Clarke) 521; *Henry v. Dubuque & Pac. R. Co.,* 2 Iowa (Clarke) 288. Quotations from the cited cases will illustrate the thought expressed. In *Henry v. Dubuque & Pac. R. Co.,* 2 Iowa (Clarke) 288, supra, on pages 306 and 307, the court said:

''But, however this may be in that state, we conclude that the radical error consists in the allowing pay for fence, *as fence,* at all. When we say this, we are not unmindful of the numerous decisions of other states, to the effect that the expense of fencing is a proper item to be included in damage for taking land for

railway purposes, many of which have been cited by appellee. But when we say that a party should not be allowed for fence *as fence,* in the assessment of damage, we by no means mean to be understood that having his land *thrown open and left in a manner unfenced* is not to be considered * * *.''

Continuing on page 307, the court suggests:

''We think it a good reason, then, for saying that the commissioners should not allow for *fence* as *fence,* that peradventure a fence may never be needed.''

Again, in *Hanrahan v. Fox* (47 Iowa 102), supra, this court declared:

''The testimony of the witnesses fixed the damages to the 40 acres owned by the plaintiff in his own right at not less than 10 nor more than 15 dollars, for the actual value of the land taken, and $35 as the cost of building 40 rods of fence made necessary by the establishment of the road. The court excluded the testimony as to the cost of building the fence, and assessed the amount of plaintiff's damages at $15. The opinion in the case of *Henry v. Dubuque & Pac. R. Co.,* 2 Iowa [Clarke] 288, is an elaborate exposition of the true method of arriving at the compensation due the owner for an appropriation of his land for public purposes. The decision in that case has been followed since that time by the courts of this state, and we see no reason to establish other and different rules. It is there held that the owner should not be allowed for fence *as fence,* in the assessment of damages. That 'it will not do to say that the proprietor will have to fence his land, therefore he should be allowed some definite price for some particular kind of fence.' 'That, if by the establishment of the road the land is thrown open and left in a manner unfenced, this fact may enter into the consideration in arriving at the depreciated value of the remaining premises.' ''

Following the former decisions, we again stated, in *Chicago & N. W. R. Co. v. Drainage Dist.* (142 Iowa 607), supra, on page 618:

''There is a further reason why the plaintiff cannot recover as damages the cost of constructing a new bridge, in the absence of a statute so providing. It is not the true measure of damage,

under any rule applicable to *ad quod damnum* cases. In cases involving damages for establishment of highways, it was held by this court, in an early day, that the claimant for damages could not recover, as such, the cost of constructing a fence, although such fence was rendered necessary by the establishment of the highway. *Hanrahan v. Fox,* 47 Iowa 102. The fact that the land was thrown open was a fact which could be considered in estimating the damages, but not the cost of a particular fence.''

Finally, in *Kosters v. Sioux County* (195 Iowa 214), supra, on page 218, we again announced:

''In determining the amount of damages, it was proper for the jury to take into consideration all pertinent facts pertaining to the condition of the farm before and after the construction of the road. The award of damages is not to be made, however, by the assessment of a series of specific items. In *Henry v. Dubuque & P. R. Co.,* 2 Iowa 288, we held that the owner of premises taken should not be allowed for '*a fence as fence,*' in the assessment of damages, and that it would not do to say that the proprietor would have to fence his land, and therefore he should be allowed some definite price for some particular kind of fence; that if, by the establishment of the road, the land is thrown open, and left in a mere unfenced condition, this fact might enter into the consideration in arriving at the depreciated value of the remaining premises. See, also, *Hanrahan v. Fox,* 47 Iowa 102. And so, in the instant case, the appellee could not recover the sum total of various specific items, such as the cost of fence, the cost of a passageway, and other similar items. The damage is to the farm as a whole, and must be awarded in a lump sum.''

So it is seen that it was quite immaterial what the fence proposed by appellees might cost at this time. Appellees perhaps would build one kind of fence, while some other landowner in the same locality would construct a different one. What the fence desired by appellees would cost, therefore, is entirely out of the question. Hence, the evidence was improperly admitted. Although the district court told the jury that the fence cost was to be considered ''in determining the difference in the fair and reasonable market value of [appellees] plaintiffs' farm before and after the establishment of the highway in question,'' yet the

error was not remedied. Two reasons appear as to why that is true:

First, the cost of the particular fence desired by appellees is immaterial because such cost does not in any way fix the proper measure of damages in the case at bar. Damages are to be based upon the depreciation in the land value because the highway is constructed; not what the expense may be in building appellees' special fence. Put differently, the proposition is, Does the land, because of the highway, require additional fencing, and thereby carry in the future an added burden which before the highway establishment was not cast upon it? As just indicated, the fact that a fence on land of this kind may have to be built, repaired, and replaced, is an element to be taken into consideration when fixing the value of appellees' land after the highway's establishment. All damages to the land, as suggested by the cases above cited, are to be considered as a whole, ''in a lump sum,'' as distinguished from separate items. Manifestly, under the evidence admitted, the jury were given a separate item, and would naturally understand that they were to consider it independent of the damage to the farm as a whole. For these reasons, the evidence should not have been admitted.

Second, the instruction from which the above excerpt was quoted, does not cure the error in admitting the evidence. While the district court told the jury to use the testimony concerning the cost of the fence in connection with determining the damages to appellees' farm before and after the highway was established, yet the fact-finding body would surely get the idea that they were to add the fence expense to the other items of damages disclosed by the evidence. Especially is that true in view of the fact that, in the paragraph of this particular instruction, the district court was telling the jury the different elements that could be considered by them in fixing appellees' damages. The cost of the fence desired by appellees at this time was not a proper element to be considered by the jury, although the district court included the same in the items that were to make up the total damages. Through the instruction, therefore, the district court in effect continued the error committed when the objectionable evidence was received into the record. Appellees' damages are to be measured by taking ''into consideration all pertinent facts pertaining to the condition of the farm before and after the con-

struction of the road," rather than by collecting independent and separate cost items and considering the aggregate thereof as the damages that should be recovered. *Kosters v. Sioux County* (195 Iowa 214), supra.

By way of repetition, we say again that it would be proper for the court to receive into the evidence the fact that the land in question, due to location and nature, may need a fence, which in the future will require repairs, and finally replacement. This fact may be considered by the jury, not to determine the cost of that fencing, as such, but in order to show that the new road cast an additional burden upon appellees' land, and thereby made it less valuable. Because the district court failed to follow the rule just stated, and improperly admitted the evidence in question, there was error.

II. In the second place, appellants complain because the court unduly limited their cross-examination of appellees' witness W. H. Harlan. Mr. Harlan testified concerning the difference in the value of appellees' land before and after the road was constructed. During the cross-examination of that witness, the following questions, objections, and rulings appear in the record:

"I [the attorney for appellants] am asking you now, Mr. Harlan, what your opinion was as to the fair and reasonable market value of this land south of the old Lincoln Highway, and the present location of the old Lincoln Highway and east of the township road immediately after the condemnation proceedings.

"Mr. Welty [attorney for appellees] : I object to that question, Your Honor, unless it excludes any alleged benefits.

"The Court: Sustained.

"The defendant [appellant] excepts.

"Mr. O'Brien [attorney for appellants] : I want to make an offer. (The defendant offers to show, on cross-examination of this witness, the value of the part of the farm in cultivation laying south of the present highway, Lincoln Highway, and east of the township road, which he has testified was worth $175 an acre immediately before the condemnation, and to show by him that this land immediately after the condemnation was worth $175 per acre.)

"Mr. Lee [attorney for appellees] : We object to the offer

unless there is coupled with it exclusion of any benefits resulting from the new location of the highway. We have no objection to his showing the value of the land after the condemnation, if it can be shown by this witness, providing there is excluded from the value any benefit resulting from the change of the relocation of the highway.

"Q. [by appellants' attorney] : Now, Mr. Harlan, what, in your opinion, was a fair and reasonable market value of the triangular 26 acres laying west of the township road immediately after the condemnation of the land in this farm for highway?

"Mr. Welty [attorney for appellees] : That is objected to, for the reason that it is incompetent, irrelevant, and immaterial, and not proper unless it excludes any alleged benefits that might be derived by reason of the relocation of the Lincoln Highway.

"The Court: Sustained.

"The defendant [appellant] excepts.

"Mr. O'Brien [attorney for appellants] : I make the same offer in connection with this 26 acres."

Appellants, by this cross-examination, were testing the ability of this witness as an expert. When so doing, the appellants had a right to determine the witness's knowledge and skill as an expert. *Ewing v. Hatcher*, 175 Iowa 443 (local citation 450). To accomplish their aim, appellants had a right to ask the expert witness concerning the value of the separate tracts of land contained within the farm. That is true even though, on direct examination, such witness would be confined to his opinion concerning the value of the farm before and after the highway was established; because, on cross-examination, the appellants would have a right to test the witness's skill by interrogating him regarding the value of the separate tracts, although, on direct, the witness was allowed to express an opinion only concerning the value of the entire farm. Otherwise, it would be difficult, if not impossible, for the appellants to test the skill and ability of a witness as an expert. Moreover, in so doing, appellants had a  right to frame their questions as they saw fit, so long as they kept within proper limits. On redirect examination, then, appellees could clear up any discrepancies brought out on cross-examination. Elimination of the benefits resulting from the new location of the highway was not essential on the

cross-examination. If such benefits were included in the witness's answer, the appellees could have the same corrected on re-direct examination. The net result of such correction would take away any apparent benefit gained by appellants through their cross-examination.

"Great liberty may be allowed in the cross-examination of experts, and counsel need not, in such cases, be confined to the exact case made, but, for the purpose of testing the witnesses' knowledge and the weight of their evidence, may assume almost any state of facts." *Bennett v. City of Marion*, 119 Iowa 473 (local citation 483).

For similar authorities, see *In re Estate of Austin*, 194 Iowa 1217; *Ewing v. Hatcher* (175 Iowa 443), supra; *Vohs v. Shorthill & Co.*, 130 Iowa 538; *Taylor v. Star Coal Co.*, 110 Iowa 40. Of course the matter "is so largely discretionary with the trial court that we do not ordinarily interfere." *Bennett v. City of Marion* (119 Iowa 473), supra. See, also, *Yanaway v. Chicago, R. I. & P. R. Co.*, 195 Iowa 86; *In re Estate of Austin* (194 Iowa 1217), supra; *Brown v. Drainage Dist.*, 163 Iowa 290.

The foregoing being assumed to be the law, there is a limit beyond which the trial court cannot go in denying a party the right to cross-examine a witness. *Glassman v. Chicago, R. I. & P. R. Co.*, 166 Iowa 254. There, during the discussion, we said, on page 260:

"It is true, of course, that the trial court has a discretion in such matters [the extent of cross-examination], but it has been said in some of the cases that it is only after the right of cross-examination has been substantially and fairly exercised that its allowance becomes discretionary * * *."

It is not our thought that the cross-examination here was limited by the district court to the extent of that in the *Glassman* case, yet there was unnecessary curtailment. Perhaps we might not reverse alone for the trial court's action in limiting the cross-examination here, but when that action is taken together with the error found in Division I, above, there is ample ground for a reversal.

Therefore, the judgment of the district court is reversed.—*Reversed.*

MORLING, C. J., and EVANS, FAVILLE, and GRIMM, JJ., concur.