FRED C. HOEFT, Appellee, v. STATE OF IOWA et al., Appellants. S. B. PLUMMER et al., Defendants, v. HOME OWNERS' LOAN CORPORATION, Intervenors.

No. 43230.

April 7, 1936.

Larson & Carr, and C. E. Walters, for appellants.

W. G. Henke and R. W. Zastrow, for appellee.

John P. Tinley and Wade Clarke, for interveners.

Kintzinger, J.—In June, 1934, plaintiff was the owner of two contiguous tracts of land inside of and near the easterly boundaries of Charles City, Iowa, abutting the south side of high-

way No. 18. The larger tract, referred to in the record as the east property, consisted of about 37 acres, and the smaller tract referred to in the record as the west property, consisted of one acre. Each tract has a house and other improvements thereon. The larger tract was owned by the plaintiff for many years. The smaller tract was owned by him only a few years prior to the condemnation. These properties are rented to and used by different tenants for separate purposes, independent of each other, and have never been used by the same person or in connection with each other.

On June 25, 1934, condemnation proceedings were had under which a strip 850 feet long and from 17 to 27 feet wide along the north end of the entire property was condemned for use in the construction of a viaduct across the Illinois Central Railroad track, which runs north and south along the easterly side of the east property and across highway No. 18. The strip north of the west tract is about 131 feet long and 17 feet wide, and the strip north of the east tract is about 720 feet long and 27 feet wide, containing altogether about one-half acre.

The old grade of highway No. 18 in front of and on the north side of plaintiff's property was practically on a level with the natural ground. The grade of the new road for the construction of the viaduct begins to rise at about the westerly end of plaintiff's property, and from there on easterly rises to the top of the overpass, where it is 36 feet above the old grade. The gardens, houses, and other improvements on both properties are from 50 to 75 feet south of highway No. 18. The elevation of the viaduct in front of the house on the east property is 23 feet above the old grade and about level with the top of the house on that property. The only ingress or egress from plaintiff's property was highway No. 18, known as Fifth Avenue, in Charles City.

The damage awarded plaintiff by the appraisement commission was $1,600. Not being satisfied with this amount, he appealed to the district court, where the case was submitted to a jury, and a verdict of $5,500 returned, and judgment thereon in favor of plaintiff was entered. The highway commission appeals.

I. The court permitted plaintiff appellee to offer evidence of the reasonable market value of each tract separately and of

both tracts together immediately before and after the condemnation.

■■■ Appellants contend that the court erred in permitting appellee to show the value of each tract separately immediately before and after the condemnation, and claim that the proper measure of damages was the difference between the value of the entire tract as a whole, immediately before and immediately after the condemnation proceedings were had. This contention is based upon the theory that the cost of separate items of injury to the property cannot be offered in evidence in determining the owner's damage, because the measure of damages is the difference between the value of the land immediately before the condemnation and immediately thereafter. It is no doubt true that it is the law that separate items of damage to the property cannot be shown to determine the owner's damage. Kosters v. Sioux County, 195 Iowa 214, 191 N. W. 993; Dean v. State of Iowa, 211 Iowa 143, 233 N. W. 36; Welton v. State Highway Commission, 211 Iowa 625, 233 N. W. 876.

In Dean v. State of Iowa, 211 Iowa 143, loc. cit. 146, 233 N. W. 36, 38, this court said:

"Under the law in this state, the costs of fencing, as such, cannot be considered by the jury. * * * the jury may properly consider the fact that a fence will necessarily have to be built, * * *. But in doing that, the necessity of the fence must be considered in its tendency to minimize the value of the farm, rather than as an independent and separately itemized item of damages."

There is no attempt, however, in this case, to show the cost of separate items of damage to each property; but it is contended by appellee that it was proper to show the difference between the reasonable market value of the separate properties for the purpose of showing the damage to all of plaintiff's property, because the evidence shows without conflict that, while plaintiff's property includes two separate tracts, and notwithstanding the fact that they are adjoining and contiguous to each other, they were, in fact, acquired by appellee as two separate and independent tracts and have always been used as such.

It is also the settled rule of law in this state that, where an entire tract of land consisting of several subdivisions is used in its entirety as a farm, it is not proper, in determining the

damages, to show the reasonable market value before and after condemnation of the various tracts separately. Welton v. State Highway Commission, 211 Iowa 625, 233 N. W. 876; Lough v. Minneapolis & St. L. R. R., 116 Iowa 31, 89 N. W. 77.

In Welton v. State Highway Commission, 211 Iowa 625, loc. cit. 632, 233 N. W. 876, 881, this court said:

"The law of eminent domain does not contemplate that, in fixing the value of a farm, plaintiff may cut to pieces his farm, and a piecemeal valuation be taken as the basis of valuation of an entire tract before and after condemnation. It is the value as a whole, before and after the condemnation, and not the value in parcels. * * * *Welton's farm was a single farm, and so treated by both parties.* Neither party claims that the 200 acres (approximately) consisted of two farms. Plaintiff was entitled to have his farm valued as a whole and his damage assessed on that basis."

In Lough v. Minneapolis & St. L. R. R., 116 Iowa 31, 36, 89 N. W. 77, 78, this court said:

"It might be that the particular tract crossed by the railroad was of little value, and a showing of this fact would tend to distract the attention of the jury from the real question, and confuse them."

In both of the latter cases, the condemnation crossed only a portion of the farm, and the question there was whether or not the portion not crossed by the condemnation proceedings should be considered as a part of the entire farm. It was there contended by the highway commission and the railroad company that the value of each subdivision of the farm should be considered separately in arriving at the damages. The holding in those cases is based on the theory that, where the various divisions of an entire tract are used as one tract, the reasonable market value of the entire farm, before and after the condemnation, must be shown in determining the damages.

In the case at bar, however, the strip of land was taken from the north end of both properties. It is the rule of law that, although two tracts or parcels of land are contiguous to each other and owned by the same person, but used for different purposes, and not in connection with each other, they should be considered as separate tracts; and, where different

tracts of land are used separately, it is proper to permit the jury to consider the reasonable market value of each tract. Ellsworth & Jones v. Ry. Co., 91 Iowa 386, 59 N. W. 78; Westbrook et al v. Ry. Co., 115 Iowa 106, 88 N. W. 202; Paulson v. State Highway Commission, 210 Iowa 651, 231 N. W. 296; 10 R. C. L., 157.

The issue as to whether or not plaintiff's land consisted of two separate tracts was clearly raised in the pleadings. The pleadings and evidence both show that, although the properties are contiguous, they are, in fact, two separate properties, one known as the east property and one known as the west property. The evidence shows that the land described and claimed by plaintiff as the east property was owned by him for many years, and that the land described as the west property was purchased by him a few years ago. The east property comprises about 37 acres and has a separate set of buildings and improvements thereon which are rented, to a separate tenant. The west property comprises about one acre of land and contains a separate set of buildings and is rented to a separate tenant. Both are used for separate and distinct purposes. The strip of land condemned by the highway commission is taken from the north end of both properties. Plaintiff alleges the existence of two properties. The Home Owners' Loan Corporation, intervener, has a mortgage upon the property described as the east property, as separate and distinct from the west property. The plaintiff and the intervener both allege the existence of two separate properties. This is denied in appellants' answer. It therefore became a question for the jury to determine whether or not there were, in fact, two separate properties included in the land in question, so that the reasonable market value of each, before and after the condemnation, could be shown to determine the damage.

In the case of Westbrook v. Ry. Co., 115 Iowa 106, loc. cit. 111, 88 N. W. 202, 204, this court said:

"The question whether the entire tract should have been considered as a whole, or portions of it separately, in estimating the damages, were questions of fact, which should have been submitted to the jury."

In the case of Paulson v. State Highway Commission, 210

Iowa 651, loc. cit. 655, 231 N. W. 296, 298, the court, referring to Ellsworth & Jones v. Ry. Co., 91 Iowa 386, 59 N. W. 78, said:

"We considered a situation involving separate tracts of land, and, in view of the fact situation disclosed in that case, * * * 'we are of the opinion that whether the entire tract should have been considered as a whole, or portions of it separately, in estimating the damages, were questions of fact, which should have been submitted to the jury.'"

We are constrained to hold that there was sufficient evidence in this case to warrant the jury in finding that plaintiff's property consisted of two separate tracts, each used independently of the other and for a different purpose. Under such circumstances, the court was warranted in permitting the jury to assess the damages based upon the reasonable market value before and after the condemnation of each tract separately.

Under the evidence in this case, the jury could have found that the east and west properties comprising the appellee's land was made up of two separate, distinct, and independent properties, or they could find that said tracts constituted one entire tract. Under the court's instructions, the jury was permitted to find either, and was by such instructions permitted to assess the damages against each tract separately or against the entire tract as a whole. The jury assessed the damages against the entire tract. As there was evidence from which the damages could be assessed by either method, and as the jury adopted the method contended for by appellants, we are constrained to hold that no prejudicial error was committed.

II. Appellants also complain of instruction 5 because the court failed to explain the term "if necessary", therein, relating to condemnation proceedings. There was no issue raised on the question of the "necessity" of condemning the land in question. This was necessarily conceded by appellants in commencing the condemnation proceedings. No specific definition of these words was therefore necessary, and we find no error in the instruction.

III. Appellants complain of instruction 8, given by the court to the jury, because the term "value" is used therein instead of "fair and reasonable market value". Instruction 8, however, must be construed in connection with instructions 6 and 7, which fully instructed that the measure of plaintiff's

damages was the difference between the fair and reasonable market value of the property immediately before the condemnation proceedings, and its fair and reasonable market value thereafter.

We find no error therein.

■■■ Appellants also contend that the court erred in giving instruction 15 because it permitted the jury "to take into consideration their own knowledge of the values of the property in connection with the valuations which have been given by * * * witnesses."

In instruction 15, the court said:

"You are instructed that in arriving at your verdict * * *, you should determine the valuation of this land in the light of the testimony given from the witness stand. You are not authorized to arbitrarily disregard the testimony of any witness. Certain witnesses have testified * * * as to the values of the land in question both before and after the condemnation * * *. You are instructed that in weighing the testimony of these witnesses * * * as to such values, *you have the right and should take into consideration your own knowledge of the values of the property in connection with the valuations which have been given by these witnesses.* You are to weigh the testimony of each witness as to such valuations *in the light of your own experience and knowledge concerning such valuations* and then give the opinion of each witness on valuation such weight as you deem it entitled to, or none, if you believe it entitled to none. But having thus weighed this testimony, your verdict must be based upon the testimony and not upon your own estimate of the difference in value."

In instruction 8 the court instructed the jury that their verdict must be based solely upon a consideration of the evidence in the case. Appellants also contend that this instruction is inconsistent and in conflict with that part of instruction 15, which tells the jury they *"have the right and should take into consideration their own knowledge of the values of the property in connection with the valuations which have been given by these witnesses,"* and that this part of instruction 15 is clearly in conflict and inconsistent with that part of the same instruction which tells the jury to base their verdict upon the testimony and not upon their own estimate of the difference in value.

It is the rule of law in this state that, where instructions are conflicting and inconsistent with each other, they are necessarily prejudicial. Morrison v. Railroad Co., 84 Iowa 663, 51 N. W. 75; Downing v. Insurance Co., 158 Iowa 1, 138 N. W. 917; Carlin v. Railroad Co., 31 Iowa 370; State v. Hartzell, 58 Iowa 520, 12 N. W. 557; Neville v. C. & N. W., 79 Iowa 232, 44 N. W. 367; State v. Schumacher, 195 Iowa 276, 191 N. W. 870; State v. Hillman, 203 Iowa 1008, 213 N. W. 603.

It is also the settled rule of law that the jury cannot base their verdict upon their own knowledge of the facts in a case. Morrison v. Railroad Co., 84 Iowa 663, 51 N. W. 75; Downing v. Insurance Co., 158 Iowa 1, 138 N. W. 917; Goulding v. Phillips & Lansing, 124 Iowa 496, 100 N. W. 516; Wood v. Barker, 49 Mich. 295, 13 N. W. 597; Burrows v. Delta Transp. Co., 106 Mich. 582, 64 N. W. 501, 29 L. R. A. 468; Hathaway v. Railroad Co., 97 Iowa 747, 66 N. W. 892.

In Morrison v. Railroad Co., 84 Iowa 663, loc. cit. 667, 51 N. W. 75, the court permitted the jury to view the premises and in one of its instructions to the jury said:

"The only purpose for which you can consider such examination [a view of the premises], is to aid you in determining the issue, with the other evidence in the case, as to whether or not the material which went into said gate in its construction was defective, and whether or not the manner of its construction was defective; and in considering this you should take into consideration the length of time which has elapsed since the accident and the time of your examination."

With reference to this instruction, we said:

"The jury were told that the only purpose for which they could consider the examination 'is to aid you in determining the issue, *with the other evidence in the case,* as to whether or not the material which went into said gate * * * was defective, and whether or not the manner of its construction was defective,'—thus permitting the jury to give weight to their own observations, instead of using them for the more intelligent application of the testimony. * * * When a view is permitted, the jury should not only be instructed as to the purpose, but cautioned *not* to consider their own observations as evidence. *It is upon the evidence, as understood in the light of their view,*

that they must decide. [Italics ours.] If a party has failed to prove a material fact, the jury must take the evidence as it is, even though their view convinces them that the fact exists. *To find the fact upon their own observation is not to find it upon evidence,* while if it had been the subject of testimony the other party might show the finding to be wrong. * * * From this language the jury must have understood that they were to give to their own observations, as to the construction of the gate and the materials used, the place and weight of evidence. We think the giving of this instruction was error.'' (Italics ours.)

In Downing v. Insurance Co., 158 Iowa 1, loc. cit. 6, 138 N. W. 917, 919, the jury was instructed that ''in determining whether the animal was killed by lightning, they were not at liberty to indulge in mere speculation or conjecture, *but that they could properly consider their own observation and experience,* if any, with reference to losses of that nature.'' In that case, this court said:

''In our opinion the instruction cannot be sustained, and in giving it the court committed an error * * *. A jury is to try a case on the evidence adduced, *and not upon personal knowledge.* * * * Of course, in weighing testimony, the *jurors may use the knowledge and experience which they possess in common with mankind in general; but it is not proper for some of them having special knowledge of a subject, either to state this knowledge to their fellow jurors, or to act upon it in arriving at a verdict.* [Italics ours.] If such a course were permitted, no record could be made of the testimony on which the case was decided, and the information upon which the jury acted would come from unsworn witnesses. If this were not the rule, there would be no necessity in many cases for introducing any testimony at all upon a given proposition, for some of the jurors might have special knowledge or experience with reference to the subject which he could detail to his fellows, and this would be the foundation of the verdict. Moreover, all cases are to be tried upon the testimony adduced, and jurors are permitted to use the knowledge and experience possessed by mankind in general in weighing that testimony. If this were not the rule, a case could be tried upon common knowledge and experience without the introduction of any testimony. * * * It is highly improper for any of the jurors to consider and found a verdict

upon the special knowledge or observation of some of its members. The authorities are but one way upon this proposition. In Douglass v. Trask, 77 Me. 35, an instruction to a jury to infer the facts from the evidence, 'or from such personal knowledge as you may have in relation to matters of this kind,' was held erroneous. An instruction that 'the jury may call into requisition their practical experience and knowledge relating to cattle of this kind' is erroneous. [Citing cases.]''

This court, in Downing v. Insurance Co., 158 Iowa 1, loc cit. 9, 138 N. W. 917, 920, approved the following language used in Gibson v. Carreker, 91 Ga. 617, 17 S. E. 965, to wit:

"It was certainly error to charge the jury that, in ascertaining the value of the lands at the time of the breach of the bonds, they might consider not only the evidence, but their own knowledge as to the value of land in the country . Juries should decide questions of fact according to the evidence introduced before them, and their personal knowledge certainly cannot constitute a part of the evidence. This is so obvious that we deem a further discussion of this subject unnecessary." After citing a number of cases sustaining this view, this court further said: "In view of such an array of cases, which are sound in their reasoning, it is impossible to sustain the instruction complained of without making a bad precedent. It must always be assumed, no matter what the fact may be, that a jury follows the instructions of the court, and if that be true the verdict here may have been founded upon the special observation or experience of some of the jurors with reference to animals killed by lightning, and not upon the testimony adduced with reference thereto. That such would not be the general knowledge and experience of mankind is clear."

Guided by this rule, we again turn to the instruction complained of. Therein the jury is distinctly told that, "in weighing the testimony of these witnesses who have given their opinions as to such values, *you have the right and should take into consideration your own knowledge of the values of the property in connection with the valuations which have been given by these witnesses.* You are to weigh the testimony of each witness as to such valuations in the light of your own experience and knowledge *concerning such valuations.*" This

part of instruction 15 clearly *directs* the jury to consider their own knowledge of the value of the property in question, and, in the light of that knowledge, permits it to weigh the testimony of the witnesses. The wording of the instruction may have been unfortunate, and it may be that the lower court did not intend to give it the meaning the words imply. After giving such instruction, the court further says:

"But having thus weighed this testimony, your verdict must be based upon the testimony and not upon your own estimate of the difference in value." The instructions of the court are necessarily the jury's guide in arriving at the verdict.

It may be that the court only intended to permit the jury, in arriving at their verdict, to use the knowledge and experience they might possess "in common with mankind in general"; but this was far from the meaning expressed in the language used in the instruction given, which directed the jury to take into consideration their own knowledge of the values of the property which is subject to the litigation pending before them. It is not proper to permit them to use or act upon any special knowledge they may have upon the value of the very property in question, in arriving at a verdict.

We are constrained to hold that that part of the instruction permitting the jury in arriving at their verdict to take into consideration their "own knowledge of the values of the property in connection with the valuations which have been given by these witnesses," was highly prejudicial. It is also our conclusion that that part of the instruction directing that their verdict be based upon the testimony and not upon their own estimate of the difference in values must have been at least conflicting, inconsistent, and confusing to the jury. For these reasons we are constrained to hold that the giving of this instruction was prejudicial and erroneous.

Appellants also contend that the court erred in denying their motion for new trial on the ground of the excessiveness of the verdict. The entire strip of land condemned comprised less than one-half acre. The verdict was $5,500. In view of the necessity of a retrial, a consideration of this error is deemed unnecessary here.

Other errors alleged have been carefully considered, but we find no merit therein.

For the reasons given in division IV hereof, a reversal necessarily follows.—Reversed.

DONEGAN, C. J., and ANDERSON, STIGER, PARSONS, ALBERT, and RICHARDS, JJ., concur.

MITCHELL, J., dissents.

MITCHELL, J. (dissenting)—The reversal of this case is based entirely upon instruction No. 15. While I am not satisfied with the wording of the instruction, in my judgment it is not prejudicial, and reversal on this ground alone seems to me to be exceedingly technical. I would affirm.